# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JAMAAL CAMERON; RICHARD
BRIGGS; RAJ LEE; MICHAEL
CAMERON; MATTHEW
SAUNDERS, individually and on
behalf of all others similarly situated,

      Plaintiffs,

      v.

MICHAEL BOUCHARD, in his
official capacity as Sheriff of Oakland
County; CURTIS D. CHILDS, in his
official capacity as Commander of
Corrective Services; OAKLAND
COUNTY, MICHIGAN,

      Defendants.

Case No. 20-cv-10949

Hon. Linda V. Parker

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

For the reasons that will be set forth in Plaintiffs' Brief in Support of Motion

for Class Certification, attached below, Plaintiffs request that this Court certify a

class, pursuant to Fed. R. Civ. P. 23(b)(2), as well as four subclasses. This class

action seeks to require Defendants to implement procedures that provide reasonable

medical care for Plaintiffs and keep them reasonably safe from contracting

communicable disease while in custody. But some people (constituting the two

subclasses) are so vulnerable to COVID-19 that no procedures could be

implemented fast enough to protect them; these people must be released immediately, and they seek a writ of habeas corpus ordering just that.

Plaintiffs, therefore, seek to certify one class with three subclasses as follows:

- The Class ("the Jail Class") is defined as: "All current and future persons detained at the Oakland County Jail during the course of the COVID-19 pandemic."

- The First Subclass ("Pre-trial Subclass") is defined as "All current and future persons detained at the Oakland County Jail during the course of the COVID-19 pandemic who have not yet been convicted of the offense for which they are currently held in the Jail."

- The Second Subclass ("Post-conviction Subclass") is defined as "All current and future persons detained at the Oakland County Jail during the course of the COVID-19 pandemic who are have been sentenced to serve time in the Jail or who are otherwise in the Jail as the result of an offense for which they have already been convicted."

- The Third Subclass ("Medically-Vulnerable Subclass") is defined as: "All members of the Jail Class who are also over the age of fifty, or who, regardless of age, experience an underlying medical condition that places them at particular risk of serious illness or death from COVID-19, including but not limited to (a) lung disease, including asthma, chronic

obstructive pulmonary disease (e.g. bronchitis or emphysema), or other chronic conditions associated with impaired lung function; (b) heart disease, such as congenital heart disease, congestive heart failure and coronary artery disease; (c) chronic liver or kidney disease (including hepatitis and dialysis patients); (d) diabetes or other endocrine disorders; (e) epilepsy; (f) hypertension; (g) compromised immune systems (such as from cancer, HIV, receipt of an organ or bone marrow transplant, as a side effect of medication, or other autoimmune disease); (h) blood disorders (including sickle cell disease); (i) inherited metabolic disorders; (j) history of stroke; (k) a developmental disability; and/or (l) a current or recent (last two weeks) pregnancy."

Plaintiffs further request that their undersigned attorneys be appointed as class counsel, pursuant to Fed. R. Civ. P. 23(g).

Respectfully Submitted,

/s/ Krithika Santhanam
Krithika Santhanam (DC Bar No. 1632807)*
Thomas B. Harvey (MBE #61734MO)*
Advancement Project National Office
1220 L Street, N.W., Suite 850
Washington, DC 20005
Tel: (202) 728-9557
Ksanthanam@advancementproject.org
Tharvey@advancementproject.org

/s/ Philip Mayor
Philip Mayor (P81691)
Daniel S. Korobkin (P72842)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6803
pmayor@aclumich.org
dkorobkin@aclumich.org

/s/  Alexandria Twinem
Alexandria Twinem (D.C. Bar No. 1644851)*
Civil Rights Corps
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
Tel: 202-894-6126  Fax: 202-609-8030
alexandria@civilrightscorps.org

/s/ Cary S. McGehee
Cary S. McGehee (P42318)
Kevin M. Carlson (P67704)
Pitt, McGehee, Palmer,
Bonanni & Rivers, PC
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
248-398-9800
cmcgehee@pittlawpc.com
kcarlson@pittlawpc.com

/s/ Allison L. Kriger
Allison L. Kriger (P76364)
LaRene & Kriger, PLC
645 Griswold, Suite 1717
Detroit, MI 48226
(313) 967-0100
Allison.kriger@gmail.com

Attorneys for Plaintiffs/Petitioners

*Applications for admission forthcoming

Dated: April 17, 2020

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JAMAAL CAMERON; RICHARD
BRIGGS; RAJ LEE; MICHAEL
CAMERON; MATTHEW
SAUNDERS, individually and on
behalf of all others similarly situated,

      Plaintiffs,

      v.

MICHAEL BOUCHARD, in his
official capacity as Sheriff of Oakland
County; CURTIS D. CHILDS, in his
official capacity as Commander of
Corrective Services; OAKLAND
COUNTY, MICHIGAN,

      Defendants.

Case No. 20-cv-10949

Hon. Linda V. Parker

## PLAINTIFFS BRIEF IN SUPPORT
## OF MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. ii

INTRODUCTION ........................................................................................... 1

BACKGROUND AND FACTS ........................................................................ 2

   I.   Plaintiffs Are Being Detained In Extraordinarily Unsafe Conditions that Cannot Protect Them From this Global Pandemic. ........................................ 2

   II.  Plaintiffs Seek Class-Wide Prospective Relief................................................ 4

ARGUMENT .................................................................................................... 5

   I.   The Proposed Class Is So Numerous That Joinder of All Proposed Class Members Is Impracticable. ................................................................... 7

   II.  Claims by The Proposed Class Raise Common Questions That Will Generate Common Answers........................................................................ 10

   III.  The Named Plaintiffs' Claims Are Typical of the Claims of the Proposed Class................................................................................................. 14

   IV.  The Named Plaintiffs Are Competent and Dedicated Class Representatives.................................................................................. 17

   V.  Certification of the Class for Prospective Relief is Appropriate Under Rule 23(b)(2). ................................................................................ 19

   VI.  Plaintiffs' Counsel Should Be Appointed Class Counsel Under Rule 23(g)............................................................................................... 21

CONCLUSION................................................................................................. 22

CERTIFICATE OF SERVICE ......................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Leis*, 204 F.R.D. 401 (S.D. Ohio 2001) ........................................... 8, 11, 20

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...........................................19

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455 (2013) ...........................................................................................................6

*Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48 (3d Cir. 1994) ...............................20

*Beattie v. CenturyTel, Inc.*, 511 F.3d 554 (6th Cir. 2007) ............................... 15, 18

*Brown v. City of Detroit*, No. 10–12162, 2012 WL 4470433 (E.D. Mich. Sept. 27, 2012) ...................................................................... 11, 15

*Calloway v. Caraco Pharm. Labs, Ltd.*, 287 F.R.D. 402 (E.D. Mich. 2012) .................................................................................................................8

*Cmtys. for Equity v. Michigan High Sch. Athletic Ass'n*, 192 F.R.D. 568 (W.D. Mich. 1999) ...................................................... 7, 8, 10, 21

*Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006) ...........................................7

*DeShaney v. Winnebago County Dept. of Soc. Services*, 489 U.S. 189 (1989) .............................................................................................................5

*Eddleman v. Jefferson County*, 96 F.3d 1448, 1996 WL 495013 6th Cir. 1996) ...........................................................................................................15

*Glover v. Johnson*, 85 F.R.D. 1 (E.D. Mich. 1977) ................................... 11, 15, 20

*Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402 (6th Cir. 2012) ...................6

*Gorton v. Johnson*, 100 F.R.D. 801 (E.D. Mich. 1984) ................................... 11, 20

*Hiatt v. Adams Cty.*, 155 F.R.D. 605 (S.D. Ohio 1994) ................................. passim

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996) .........................................17

*In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583 (E.D. Mich. 1985) ...........7

*Johnson v. City of Opelousas*, 658 F.2d 1065 (5th Cir. 1981) ...........................7, 21

*Miller v. Univ. of Cincinnati*, 241 F.R.D. 285 (S.D. Ohio 2006) ............................8

*Penland v. Warren Cty. Jail*, 797 F.2d 332 (6th Cir. 1986) .....................................7

*Peters v. Cars To Go, Inc.*, 184 F.R.D. 270 (W.D. Mich. 1998) ..............................8

*Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004) ................................................15

*Reese v. CNH Am., LLC*, 227 F.R.D. 483 (E.D. Mich. 2005) ................................14

*Richmond v. Huq*, 885 F.3d 928 (6th Cir. 2018) .......................................................2

*Rikos v. Procter & Gamble Co.*, 799 F.3d 497 (6th Cir. 2015) ........................ 10, 12

*Smith v. Ohio Dep't of Rehab. and Corr.*, No. 2:08–CV–15, 2012 WL 1440254 (S.D. Ohio April 26, 2012) ................................ 11, 15, 20

*Wal-Mart v. Dukes*, 564 U.S. 338 (2011) ....................................... passim

*Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013) ............................................................ 6, 10

*Williams v. City of Philadelphia*, 270 F.R.D. 208 (E.D. Pa. 2010) ........................ 20

## Constitutional Provisions

US Const, Am VIII ................................................................ passim

US Const, Am XIV ........................................................ 1, 2, 12, 13

## Rules

Fed. R. Civ. P. 23(a) ............................................................ passim

Fed. R. Civ. P. 23(b) ............................................................ passim

Fed. R. Civ. P. 23(g) ...................................................... 1, 21, 22

## Other Authorities

8 *Newberg on Class Actions* § 25:20 (4th ed. 2002) .............................. 19

Michigan Joint Task Force on Jail and Pretrial Incarceration, *Report and Recommndations*, p 7 (Jan. 10, 2020) ................................ 9

Nagareda, Richard A., *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009) ................................ 10

*Newberg on Class Actions* § 3:12 (5th ed.) ................................ 8, 10

*Newberg on Class Actions* § 4:28 (5th ed.) ................................ 19

Wagner, Peter & Widra, Emily, *No need to wait for pandemics: The public health case for criminal justice reform*, Prison Policy Initiative (Mar. 6, 2020) ................................ 9

Wingblad, Aileen, *23 Oakland County Jail Inmates Have Confirmed COVID-19*, Oakland Press (Apr. 10, 2020) ................................ 8

## INTRODUCTION

This case is about Defendants' failure to act to protect the lives of people jailed in Oakland County Jail ("the Jail") from novel coronavirus and its resulting disease, COVID-19.  Defendants have failed to respond adequately to the urgent threat posed to people confined in the Jail during this growing and lethal pandemic, making it impossible for the incarcerated class members to observe the precautionary steps necessary to keep themselves safe, such as social distancing, increased personal hygiene, sanitizing one's environment, access to testing, and wearing protective clothing. Defendants' disregard of the known risks of illness and death exposes jail detainees to a highly-fatal infectious disease in violation of their rights under the Eighth and Fourteenth Amendments.  Named Plaintiffs challenge these unconstitutional conditions and now move for class certification under Federal Rules of Civil Procedure 23(a) and 23(b)(2).  Named Plaintiffs also move for appointment of the undersigned as class counsel under Rule 23(g).

Class certification is warranted because Plaintiffs seek declaratory and injunctive relief to address the unconstitutional conditions that prevail in the Jail. These conditions pose similar health risks to Plaintiffs and all putative class members, by exposing them all (as well as jail staff and the public at large) to a serious risk of infection and, as a result, serious and lasting bodily harm—up to and including death.  Resolving Plaintiffs' claims requires answering the same

common questions of law and fact by finding that the conditions in the jail violate the Eighth and Fourteenth Amendments.[1]  A declaratory judgment and injunction as to the entire class, which should include additional remedies for the Medically Vulnerable Subclass, will address these issues for all class members.  And there are far too many class members, and the class and subclasses are too fluid, to efficiently resolve these questions individually.  The named Plaintiffs and their counsel are dedicated to vindicating the constitutional rights of the proposed class members, even if the named Plaintiffs' cases are resolved.  Counsel will provide quality representation for the interests of proposed class members—just as they have for other similar classes of incarcerated people around the nation and for numerous civil rights classes in the state of Michigan and beyond.

## BACKGROUND AND FACTS

I.    **Plaintiffs Are Being Detained In Extraordinarily Unsafe Conditions that Cannot Protect Them From this Global Pandemic.**

The Jail is a ticking time bomb—a mass outbreak of COVID-19 is imminent due to conditions inside the jail that create a breeding ground for the rapid

---

[1] As explained in more detail in Plaintiffs' Complaint and Brief in Support of Emergency Motion for Temporary Restraining Order and Preliminary Injunction, the constitutional standard with respect to the Pre-trial Subclass is governed by the Fourteenth Amendment rather than the Eighth.  Accordingly, that subclass  need only prove that the medical need is objectively serious and the Jail's response inadequate. *See Richmond v. Huq*, 885 F.3d 928, 938 n.3 (6th Cir. 2018); TRO Br. at 18 & n.6; Compl. ¶¶ 107, 112.

transmission of this virus.  Necessary social distancing is impossible inside the Jail: up to sixty people are forced to live in the same jail cell where dozens of bunk beds are placed only one to three feet apart. TRO Ex. G ("Saunders Decl.") ¶ 2; TRO Ex. H ("Arsineau Decl.") ¶ 2. In "the tanks," which are meant to be holding cells, there are no bunks at all—forcing people to sleep on the floor in extremely close proximity to each other.  TRO Ex. D ("Lee Decl.") ¶¶ 18–19; TRO Ex. B ("J. Cameron Decl.") ¶ 9. Worse yet, Defendants have purposely relocated at least two named Plaintiffs, and an unknown number of other class members, from the annex building (where the outbreak is less in evidence) to "the tanks" as punishment for raising concerns about the health and safety of the jail environment in the age of coronavirus.  Lee Decl. ¶¶ 9–16; J. Cameron Decl. ¶¶ 9, 26. Indeed, guards routinely use the threat of moving people into infected areas of the building as a means of control and to prevent incarcerated people from seeking improvements in the carceral environment. TRO Ex. I ("Bates Decl.") ¶ 12; J. Cameron Decl. ¶ 10.

Toilets, sinks, and showers are shared without disinfection between each use; communal food is being partially prepared in the main kitchen where there have been confirmed cases of COVID-19; people exhibiting COVID-19 symptoms are being held in the same cells as people who are asymptomatic. Bates Decl. ¶ 9; TRO Ex. E ("M. Cameron Decl.") ¶ 11; TRO Ex. F ("Kucharski Decl.") ¶ 3 – 5; Arsineau Decl. ¶ 5; Saunders Decl. ¶ 2—3; Lee Decl. ¶ 23. Detained people who are extremely

sick are not tested for COVID-19 and are instead ordered by jail guards to continue serving food to other inmates without proper protective equipment. Kucharski Decl. ¶ 3 – 5; Arsineau Decl. ¶ 5.  Defendants do not provide free hygiene or personal sanitation supplies to anyone confined at the Jail beyond (in some areas of the jail only) a small, non-antibacterial bar of soap that is insufficient for the routine handwashing and cleaning necessary to mitigate against the spread of COVID-19. TRO Ex. C ("Briggs Decl.") ¶ 6; Kucharski Decl. ¶ 13.  There is no way for incarcerated people to keep their cells or the filthy shared toilets and showers clean and hygienic. J. Cameron Decl. ¶¶ 13, 17; Briggs Decl. ¶ 5; Kucharski Decl. ¶ 15.

Staff often do not wear protective personal equipment like gloves or masks when interacting with people confined at the Jail.  J. Cameron Decl. ¶¶ 4, 7, 11. Thermometers are not being sanitized between each use.  Arsineau Decl. ¶ 6. When people confined at the Jail are exposed to the virus or become symptomatic, Defendants are not promptly or properly treating them. Kucharski Decl. ¶¶ 6–9; Saunders Decl. ¶¶ 4, 9; Briggs Decl. ¶¶ 8–9.

## II.     Plaintiffs Seek Class-Wide Prospective Relief.

The Jail's policies and practices violate the rights of all class members to be free from cruel and unusual punishment and the resulting right, once detained, to be held in a facility that does not present egregious medical hazards.  *See DeShaney v. Winnebago County Dept. of Soc. Services*, 489 U.S. 189, 200 (1989)

("[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." ).  Plaintiffs seek class-wide declaratory and injunctive relief declaring the conditions under which the entire class is detained to be unconstitutional, and ordering that conditions be immediately and drastically improved.  In the case of the Medically Vulnerable Subclass, given the immediate and severe health risk posed by the conditions, conditions that cannot be abated rapidly or starkly enough to protect these medically vulnerable individuals, Plaintiffs seek subclass wide relief ordering immediate release.

## ARGUMENT

Under Rule 23 of the Federal Rules of Civil Procedure, the party seeking class certification must show that:

(1)   the class is so numerous that joinder of all members is impracticable;

(2)   there are questions of law or fact common to the class;

(3)   the claims or defenses of the named parties are typical of the claims or defenses of the class; and

(4)    the named parties will fairly and adequately protect the interest of the

class.

Fed. R. Civ. P. 23(a).  The class must also satisfy one requirement in Rule 23(b).

While the Court must perform a "rigorous analysis" to determine whether to

certify a class, *Wal-Mart v. Dukes*, 564 U.S. 338, 351 (2011), the Court may not

require the plaintiffs to prove their claims at the class certification stage.  *See*

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 466 (2013)

("Merits questions may be considered . . . only to the extent . . . that they are

relevant to determining whether the Rule 23 prerequisites for class certification are

satisfied.").  At the certification stage, plaintiffs need only provide evidence to

demonstrate that Rule 23 itself is satisfied; certification is not a "dress rehearsal for

the trial on the merits."  *In re Whirlpool Corp. Front-Loading Washer Prods. Liab.*

*Litig.*, 722 F.3d 838, 851–52 (6th Cir. 2013) (internal quotations and citation

omitted).  Moreover, "it is not always necessary . . . to probe behind the pleadings

before coming to rest on the certification question, because sometimes there may

be no disputed factual and legal issues that strongly influence the wisdom of class

treatment."  *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 417 (6th Cir.

2012) (internal quotations and citation omitted).

Class certification is particularly favored when, as here, the named plaintiffs

assert civil rights claims that are of a fleeting or transitory nature, such that

6

mootness concerns would make it difficult or impossible for individuals to litigate the issues outside of the class context. *See Johnson v. City of Opelousas*, 658 F.2d 1065, 1070 (5th Cir. 1981) ("[W]e believe that the substantial risk of mootness presented by the facts of this dispute was sufficient to create a need for certification."); *see also Penland v. Warren Cty. Jail*, 797 F.2d 332 (6th Cir. 1986) (citing *Johnson* with approval); *Cmtys. for Equity v. Michigan High Sch. Athletic Ass'n*, 192 F.R.D. 568, 575 (W.D. Mich. 1999). Indeed, given the "short term nature of incarceration in a county jail, a class should be certified when it is the "only vehicle whereby the legality of [a jail's] operation can be determined." *Hiatt v. Adams Cty.*, 155 F.R.D. 605, 608–09 (S.D. Ohio 1994).

## I.   The Proposed Class Is So Numerous That Joinder of All Proposed Class Members Is Impracticable.

Plaintiffs' proposed class is sufficiently numerous to make joinder impracticable. *See* Fed. R. Civ. P. 23(a)(1). Although there is no strict numerical test, "substantial" numbers usually satisfy the numerosity requirement. *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006). Where plaintiffs can show that the number of potential class members is large, the numerosity requirement is met "even if plaintiffs do not know the exact figure." *In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583, 601 (E.D. Mich. 1985). "[A] class numbering more than 40 members usually satisfies the impracticability requirement, and classes containing 100 or more members routinely satisfy the numerosity requirement."

*Peters v. Cars To Go, Inc.*, 184 F.R.D. 270, 276 (W.D. Mich. 1998) (citation omitted); *see Calloway v. Caraco Pharm. Labs, Ltd.*, 287 F.R.D. 402, 406 (E.D. Mich. 2012); *Cmtys. For Equity*, 192 F.R.D. at 571 ("Numbers alone . . . will dictate impracticability when the numbers are large."). Courts also consider "judicial economy arising from the avoidance of a multiplicity of actions." *Newberg on Class Actions* § 3:12 (5th ed.); *see Calloway*, 287 F.R.D. at 406.

Furthermore, the Rule 23(a)(1) certification requirement is satisfied where additional factors make joinder impracticable. In particular, "[j]oinder of future class members is inherently impracticable." *Miller v. Univ. of Cincinnati*, 241 F.R.D. 285, 290 (S.D. Ohio 2006). Thus, due to the fluid nature of a jail population, actions seeking prospective relief regarding transitory jail time are especially well-suited for class action status. *See Hiatt*, 155 F.R.D. at 608; *see also Allen v. Leis*, 204 F.R.D. 401, 406 (S.D. Ohio 2001).

The proposed class easily meets the Rule 23(a)(1) numerosity requirement. According recent reporting, the population in Jail stands at approximately 830 human beings.[2] And approximately 50% of all people incarcerated in Michigan's

---

[2] *See* Aileen Wingblad, *23 Oakland County Jail Inmates Have Confirmed COVID-19*, Oakland Press (Apr. 10, 2020), available at https://www.theoaklandpress.com/news/coronavirus/23-oakland-county-jail-inmates-have-confirmed-covid-19/article_9cb8f138-7b69-11ea-ab69-0f769f8495c1.html.

jails are pre-trial detainees,[3] meaning that the Pre-Trial Subclass and the Post-Conviction Subclass each constitute approximately half of the class as whole.

As to the Medically Vulnerable Subclass, although its exact size cannot be known in advance, in just one section of the Annex building at the jail (the smaller of the two Jail buildings), there are approximately 40 people who are taking prescription medication for various medical conditions.  J. Cameron Decl. ¶ 16**.** And demographic data of jail populations more generally confirms that well over 30% of detained populations typically suffer from conditions that render them medically vulnerable to the coronavirus, suggesting that the Medically Vulnerable Subclass likely numbers well over one hundred given the overall jail population. See  Peter Wagner & Emily Widra, *No need to wait for pandemics: The public health case for criminal justice reform*, Prison Policy Initiative (Mar. 6, 2020), available at www.prisonpolicy.org/blog/2020/03/06/pandemic/. When the additional future class members who will continue to be arrested and detained during this health pandemic are included, the class likely exceeds 1,000 and the subclasses number in the hundreds.  Because the number of potential plaintiffs in

---

[3] *See* Michigan Joint Task Force on Jail and Pretrial Incarceration, *Report and Recommndations*, p 7 (Jan. 10, 2020), available at https://courts.michigan.gov/News-Events/Documents/final/Jails%20Task%20Force%20Final%20Report%20and%20Recommendations.pdf.

the proposed class vastly exceeds the number who could be joined practicably,

Rule 23(a)(1) is satisfied here.

## II. Claims by The Proposed Class Raise Common Questions That Will Generate Common Answers.

The claims asserted on behalf of the proposed class include common

questions of law and fact that satisfy Rule 23(a)(2). Commonality requires that the

class members' claims "depend on a common contention" of fact *or* law such that

"determination of its truth or falsity will resolve an issue that is central to the

validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Courts

must "start from the premise that there need be only one common question to

certify a class." *Whirlpool*, 722 F.3d at 853. Courts find common questions of

both law and fact "at a high level of generality." *Newberg on Class Actions* § 3:19

(5th ed.) (internal quotations and citation omitted).

Commonality also requires these common questions "to generate common

*answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 349

(quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*,

84 N.Y.U. L. Rev. 97, 132 (2009) (emphasis in original)). These "common

answers" must "relate[] to the actual theory of liability in the case." *Rikos v.

Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015); *see also Cmtys. For

Equity*, 192 F.R.D. at 572; *Newberg on Class Actions* § 3:20 (5th ed.) ("When the

party opposing the class has engaged in some course of conduct that affects a

10

group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persona affected.").

Accordingly, courts in the Sixth Circuit have repeatedly certified class actions in which incarcerated people challenge the circumstances or conditions of their detention. *See Brown v. City of Detroit*, No. 10–12162, 2012 WL 4470433 (E.D. Mich. Sept. 27, 2012) (class of detainees challenging their detention for more than 48 hours without probable cause); *Smith v. Ohio Dep't of Rehab. and Corr.*, No. 2:08–CV–15, 2012 WL 1440254 (S.D. Ohio April 26, 2012) (class of prisoners suffering exposure to high levels of asbestos); *Hiatt*, 155 F.R.D. at 609 (finding commonality satisfied where "[t]he conditions, policies and practices challenged" in the carceral setting impacted all detained people); *Allen*, 204 F.R.D. at 406–07 (class of detainees challenging payments associated with their detention); *Gorton v. Johnson*, 100 F.R.D. 801 (E.D. Mich. 1984) (class of incarcerated people challenging mental health treatment provided to them); *Glover v. Johnson*, 85 F.R.D. 1, 5-6 (E.D. Mich. 1977) (class of female prisoners who challenged the Michigan Department of Corrections' unconstitutional policies in providing women with inferior educational and vocational programs).

At the core of this case is the common core of facts inflicting constitutional injury on each member of the proposed class, namely the unsafe and unhygienic conditions prevailing in the Jail and the concomitant risks of contracting COVID-

11

19.  All class members suffer the same injury, namely an unconstitutional risk of exposure to an extraordinarily dangerous disease.  And all members of the Medically Vulnerable Subclass share a greatly elevated actuarial risk or suffering death or permanent organ damage or failure.

These injuries are "*capable* of classwide resolution," *Rikos*, 799 F.3d at 505 (quoting *Dukes*, 564 U.S. at 350), because the Court can issue a single declaration finding that the conditions in the Jail to be in violation of the Eigth and Fourteenth Amendments and ordering immediate measures to address the conditions.  And a single additional remedy mandating release of the Medically Vulnerable Subclass can address the increased risk to the subclass.  In sum, this case goes far beyond the "single common question [that] will do." *Dukes*, 564 U.S. at 359 (internal quotations and citation omitted).  Indeed, *most* questions of fact and law that will arise in this suit are common across the class.  Among the most central common questions of fact are:

- What measures Defendants implemented in the Jail in response to the COVID-19 crisis;

- Whether the conditions in the Jail are sufficient to prevent an unreasonable risk of the spread of COVID-19;

- Whether Defendants' practices during the COVID-19 pandemic expose people jailed at the Jail to a substantial risk of serious harm;

12

- Whether Defendants knew of and disregarded a substantial risk of serious harm to the safety and health of the class and subclasses; and

- Whether COVID-19 presents a heightened risk of harm and potential death to the Medically Vulnerable Subclass.

Among the most important common questions of law are:

- As to the entire class: whether the conditions in which the class is confined are objectively unreasonable given the health risks to class members.[4]

- As to the Pre-Trial Subclass: whether Defendants are liable under the Fourteenth Amendment for the objectively unreasonable conditions of confinement that are very likely to cause serious illness and needless suffering.

- As to the Post-Conviction Subclass: whether Defendants are liable

---

[4] As explained in footnote 1, *supra*, and in the merits briefing, the Eighth Amendment governs the constitutionality of the terms of confinement for people who have been convicted whereas the Fourteenth Amendment governs the constitutionality of the terms of confinement for people still awaiting trial. To find an Eighth Amendment violation as to the Post-Conviction Subclass, this court must find both that the conditions in the Jail are objectively unreasonable and that the Jail was subjectively aware of and disregarded the risks. To find a Fourteenth Amendment violation as to the Pre-Trial Subclass, Plaintiffs position is that only the first part of that inquiry (objective unreasonableness) applies. The objective unreasonableness component of the inquiry is common to all subclasses. See Compl. ¶¶ 107, 112; TRO Br. at 18 & n.6.

13

under the Eighth Amendment for their deliberate indifference to conditions of confinement that are very likely to cause serious illness and needless suffering.

- As the the Medically Vulnerable Subclass:  whether the threat of harm or death to members of the subclass is so severe that the only constitutionally permissible way to protect them is to release them from custody immediately.

In short, common questions of fact and law pervade this case, satisfying the Rule 23(a)(2) commonality requirement.

## III.  The Named Plaintiffs' Claims Are Typical of the Claims of the Proposed Class.

The Plaintiffs in this case have claims typical of all of the members of the class, i.e., of all of the people incarcerated in the Jail.  To meet the typicality requirement, the named plaintiffs' claims must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "The commonality and typicality requirements of Rule 23(a) tend to merge." *Dukes*, 564 U.S. at 349 n.5.  And, "[l]ike the test for commonality, the test for typicality is not demanding and the interests and claims of the various plaintiffs need not be identical." *Reese v. CNH Am., LLC*, 227 F.R.D. 483, 487 (E.D. Mich. 2005).

"A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if [the] claims are

14

based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). So long as the class and its representatives have similar legal theories arising from the same practice or course of conduct, the requirement is met "even if substantial factual distinctions exist between the named and unnamed class members." *Rankin v. Rots*, 220 F.R.D. 511, 518 (E.D. Mich. 2004).

Courts in the Sixth Circuit have consistently found prisoners' claims to be "typical" of the class they propose to represent where the claims arise from policies or conditions at an institution affecting all members of the proposed class. In *Glover*, 85 F.R.D. at 5-6, the court held that plaintiffs' claims regarding the Department of Corrections' policies were typical of those of the class, regardless of whether each class member was "identically situated." In *Smith*, 2012 WL 1440254, the court found that a prisoner's claims regarding asbestos at the prison were typical of those of the class of prisoners he sought to represent because they arose "from the same events, practice or course of conduct." And in *Brown*, 2012 WL 4470433, the court held that the named plaintiff raised claims that were typical of those of the proposed class of pretrial detainees, i.e., that he was detained for a substantial amount of time without bedding and for more than 48 hours without a probable cause hearing. *See also Eddleman v. Jefferson County*, 96 F.3d 1448, 1996 WL 495013 at *4 (6th Cir. 1996) (unpublished) (typicality requirement met

where plaintiffs challenged county jail's blanket strip search policy even though individual searches varied in scope).

Each named Plaintiff's claim is based on the same or similar conditions in the Jail that do not provide adequate protection for the health and safety of the people incarcerated their.  By the very nature of a contagion, every named Plaintiff (and every class member) is subject to harm as a result of the unhygienic conditions in the Jail.  To the extent conditions vary in different buildings or sections of the jail, all detained people are still similarly impacted given that transmission vectors like guards, contract workers like Aramark, incarcerated people, and supplies move between the buildings and section.  See J Cameron Decl. ¶¶ 4–5, 25; M. Cameron Decl. ¶¶ 11–12; Lee Decl. ¶¶23–24.  In fact, the evidence shows that the guards at the Jail specifically use the fact that an outbreak has occurred in one building as a threat to suppress complaints by, and to punish, people detained in the other building who are seeking safer conditions there.  J. Cameron Decl. ¶¶ 8–10; Lee Decl. ¶¶ 9–18; Briggs Decl. ¶ 8.  And the Plaintiffs include people detained in both buildings, *see, e.g.,* M. Cameron Decl. ¶ 1 (annex); Briggs Decl. ¶ 2 (main building); J. Cameron Decl. ¶¶ 3, 9 (has been housed in both), people detained pre- and post-conviction, *see, e.g.*, Briggs Decl. ¶ 1 (pretrial); Lee Decl. ¶ 2 (post-conviction), and individuals who are medically vulnerable and others who are not, *see, e.g.*, J. Cameron Decl. ¶ 2 (medically

16

vulnerable); Sauders Decl. (mentioning no vulnerabilities).  In other words, the named Plaintiffs' experiences exemplify the ways that the Jail's Policies and Practices harm the members of the class and demonstrate that the harms are widespread across all types of class members.

## IV.   The Named Plaintiffs Are Competent and Dedicated Class Representatives.

The named Plaintiffs also fulfill the final requirement under Rule 23(a): they "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To determine the issue of adequacy of representation, the Sixth Circuit has articulated two criteria: "1) the representative must have common interests with unnamed members of the class[;] and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel."  *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (internal quotations and citation omitted).  "The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members."  *Id.*

In this case, the first adequacy criterion is met for reasons set forth in the commonality and typicality discussions above.  The named Plaintiffs do not have interests that are in any way contrary to the rest of the class.  The relief they seek— declaratory and injunctive relief from unconstitutional policies and practices—

would benefit the entire class equally.  There are no conflicts between the named Plaintiffs and the class.

The named Plaintiffs are also ready and willing to take an active role in litigating this case, including by responding to discovery as needed.  Each has met with counsel multiple times by phone (the only method of communication possible in light of the pandemic crisis), are aware of the duties and obligations that apply to representative plaintiffs in class litigation, and are committed to seeking relief on behalf of all class members.

The second adequacy criterion, adequacy of counsel, is also clearly satisfied here.  Adequacy of counsel is met where "class counsel are qualified, experienced and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another." *Beattie*, 511 F.3d at 562-63.  Plaintiffs' counsel are highly qualified and experienced civil rights attorneys who are able and willing to conduct this litigation on behalf of the class. Plaintiffs' counsel from the American Civil Liberties Union Fund of Michigan; Civil Rights Corps; the Advancement Project; Pitt, McGehee, Palmer & Rivers PC, and LaRene & Kriger, PLC; collectively have extensive experience litigating complex class action cases and civil rights cases, including cases concerning the constitutional rights of incarcerated people.  Ex. 1 (Advancement Project) ¶¶ 2, 4–6 Ex. 2 (ACLU) ¶¶ 2, 4–5; Ex. 3 (Civil Rights Corps) ¶ 4; Ex. 4 (Pitt McGehee) ¶¶

18

2–5, 12, 13, 28.  As evidenced by the cited declarations and the cases noted therein, counsel have a history of zealous advocacy on behalf of their clients, as evidenced by the filings in those cases.  Accordingly, Plaintiffs meet Rule 23(a)(4)'s adequacy requirement.

## V.   Certification of the Class for Prospective Relief is Appropriate Under Rule 23(b)(2).

The proposed class in this case is ideal for certification under Rule 23(b)(2). To certify a class under Rule 23(b)(2), the party seeking class certification must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "This is a simple inquiry in most cases."  *Newberg on Class Actions* § 4:28 (5th ed.).  The requirement of a generally applicable set of actions "ensures that the class's interests are related in a manner that makes aggregate litigation appropriate . . . and therefore efficient."  *Id.*  Thus, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class."  *Dukes*, 564 U.S. at 360.

As the Supreme Court has recognized, civil rights cases are "prime examples" of Rule 23(b)(2) class actions.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *see Dukes*, 564 U.S. at 361; 8 *Newberg on Class Actions* § 25:20 (4th ed. 2002) ("Rule 23(b)(2) was drafted specifically to facilitate relief in

civil rights suits.").  In actions primarily seeking injunctive relief, the (b)(2) requirement is "almost automatically satisfied."  *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994).  "What is important is that the relief sought by the named plaintiffs should benefit the entire class."  *Id*. at 59.

"Numerous courts have held that Rule 23(b)(2) is an appropriate vehicle in actions challenging prison conditions." *Williams v. City of Philadelphia*, 270 F.R.D. 208, 222 (E.D. Pa. 2010).  Within the Sixth Circuit, many courts have certified prisoner class actions under Rule 23(b)(2) where the claims challenged conditions affecting the larger population of incarcerated people.  See, e.g., *Glover*, 85 F.R.D. 1; *Gorton*, 100 F.R.D. 801; *Hiatt*, 155 F.R.D. 605; *Allen*, 204 F.R.D. 401; *Smith*, 2012 WL 1440254.

So too here, the class proposed here is exactly the kind of class that Rule 23(b)(2) embraces.  *See id.*  The class's interests are related in a manner that warrants aggregate litigation.  Defendants have "alleged that the policies and practices of the Defendants and the condition existing at the jail affected the class as a whole." *Hiatt*, 155 F.R.D. at 610.  Specifically, Plaintiffs allege that Defendants have permitted unsafe, indeed, lethal, conditions to persist within the jail.  Injunctive and declaratory relief are appropriate to the class precisely because the only adequate relief here is enjoining Defendants' unconstitutional policies and practices across the board and declaring their unconstitutionality.  "Indeed, the

remedy sought, to be effective, must be system wide rather than individually

oriented" in light of the highly contagious nature of the coronavirus.  *Id.*

Furthermore, it is far more efficient for this Court to grant injunctive and

declaratory relief protecting the entire class than to extend that relief piecemeal

through individual suits.  Class certification is also necessary because the

inherently transitory nature of the constitutional harms at issue here could mean

that any individual class member's claim might become moot before it could be

addressed on the merits and because new class members face the prospect of

immediate harm through unconstitutional exposure to the conditions in the jail the

moment they are detained.  *See Johnson*, 658 F.2d at 1070 (5th Cir. 1981); *Cmtys.*

*for Equity*, 192 F.R.D. at 575; *Hiatt*, 155 F.R.D. at 608–09.  Accordingly, this

Court should certify the class under Rule 23(b)(2).

## VI.   Plaintiffs' Counsel Should Be Appointed Class Counsel Under Rule 23(g).

Federal Rule of Civil Procedure 23(g) requires that the court appoint class

counsel for any class that is certified.  Fed. R. Civ. P. 23(g)(1).  Class counsel must

"fairly and adequately represent the interests of the class."  Fed. R. Civ. P.

23(g)(1)(B).  A court must consider factors including: (1) "the work counsel has

done in identifying or investigating potential claims in this action"; (2) "counsel's

experience in handling class actions, other complex litigation, and the types of

claims asserted in the action"; (3) "counsel's knowledge of the applicable law";

and (4) "the resources that counsel will commit to representing the class." Fed. R.

Civ. P. 23(g)(1)(A).

The undersigned counsel satisfy these requirements. First, Plaintiffs'

counsel have interviewed Plaintiffs and other class members, performed relevant

legal research and drafting, and investigated the facts and legal claims raised in this

case in detail, despite the significant practical obstacles posed by the nature of the

current global health crisis. Ex. 2 ¶ 6 Ex. 3 ¶ 5. Second, Plaintiffs' counsel have

significant experience litigating class action and civil rights actions, and have

extensive and specific experiencing litigating cases involving the rights of

incarcerated peoples. Ex. 1 ¶¶ 2, 4–6 Ex. 2 ¶¶ 2, 4–5; Ex. 3 ¶ 4; Ex. 4 ¶¶ 2–5, 12,

13, 28; *supra* Section IV. Finally, Plaintiffs' counsel are prepared to contribute

significant resources to the representation of this class. Ex. 1 ¶ 7; Ex. 2 ¶ 6; Ex. 3

¶ 6; Ex. 4 ¶¶ 6. Therefore, Plaintiffs' counsel satisfies the four criteria in Rule

23(g), and they respectfully request appointment as class counsel.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court

certify the class pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.

Plaintiffs also request that undersigned counsel be appointed class counsel under

Rules 23(a)(4) and (g). In the alternative, if Defendants contest material issues of

fact necessary for class certification, Plaintiffs request the opportunity to conduct

discovery related to class certification and a subsequent hearing.

Respectfully Submitted,

/s/ Krithika Santhanam
Krithika Santhanam (DC Bar No. 1632807)*
Thomas B. Harvey (MBE #61734MO)*
Advancement Project National Office
1220 L Street, N.W., Suite 850
Washington, DC 20005
Tel: (202) 728-9557
Ksanthanam@advancementproject.org
Tharvey@advancementproject.org

/s/ Philip Mayor
Philip Mayor (P81691)
Daniel S. Korobkin (P72842)
American Civil Liberties Union
   Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6803
pmayor@aclumich.org
dkorobkin@aclumich.org

/s/  Alexandria Twinem
Alexandria Twinem (D.C. Bar No. 1644851)*
Civil Rights Corps
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
Tel: 202-894-6126  Fax: 202-609-8030
alexandria@civilrightscorps.org

/s/ Cary S. McGehee
Cary S. McGehee (P42318)
Kevin M. Carlson (P67704)
Pitt, McGehee, Palmer,
Bonanni & Rivers, PC
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
248-398-9800
cmcgehee@pittlawpc.com
kcarlson@pittlawpc.com

/s/ Allison L. Kriger
Allison L. Kriger (P76364)
LaRene & Kriger, PLC
645 Griswold, Suite 1717
Detroit, MI 48226
(313) 967-0100
Allison.kriger@gmail.com

Attorneys for Plaintiffs/Petitioners

   *Applications for admission forthcoming

Dated: April 17, 2020

## <u>CERTIFICATE OF SERVICE</u>

    I affirm that this motion for class certification and supporting brief and exhibits will be served concurrently with, and in all the same manners as, the service of the Summons and Complaint, and the Emergency Motion for Temporary Restraining Order and Preliminary Injunction in this matter.


                              /s/ Cary S. McGehee

                              Cary S. McGehee