UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMAAL CAMERON, RICHARD BRIGGS,
RAJ LEE, MICHAEL CAMERON, and
MATTHEW SAUNDERS, individually and
on behalf of all others similarly situated,

    Plaintiffs,      Civil Case No. 20-10949
                Honorable Linda V. Parker

v.

MICHAEL BOUCHARD, CURTIS D. CHILDS,
and OAKLAND COUNTY,

    Defendants.
_____/

## AMENDED OPINION AND ORDER

On this date, Plaintiffs filed a putative class action complaint, raising grave concerns about the conditions in the Oakland County Jail in the face of the novel coronavirus (COVID-19) pandemic. Plaintiffs are Oakland County Jail pretrial or convicted detainees. Plaintiffs seek to represent a class of all current and future Oakland County Jail (hereafter also "Jail") detainees, as well as the following sub-classes:

- The First Subclass ("Pre-trial Subclass") is defined as "All current and future persons detained at the Oakland County Jail during the course of the COVID-19 pandemic who have not yet been convicted of the offense for which they are currently held in the Jail."

- The Second Subclass ("Post-conviction Subclass") is defined as "All current and future persons detained at the Oakland County Jail during the course of the COVID-19 pandemic who have been sentenced to serve time in the Jail or who are otherwise in the Jail as the result of an offense for which they have already been convicted."

- The Third Subclass ("Medically-Vulnerable Subclass") is defined as: "All members of the Jail class who are also over the age of fifty or who, regardless of age, experience an underlying medical condition that places them at particular risk of serious illness or death from COVID-19 …."

Plaintiffs also filed an emergency motion for temporary restraining order ("TRO") in which they ask the Court to order (a) the release of members of the Medically-Vulnerable Subclass pending briefing and argument and (b) the undertaking of certain measures to improve hygiene and safety at the Jail.

Having reviewed Plaintiffs' Complaint and pending motion, the Court is granting at this time Plaintiffs' request for a TRO requiring Defendants to utilize the measures set forth below to improve hygiene and safety at the Jail.[1] The Court, however, is without sufficient information to rule on Plaintiffs' request to release all members of the Medically-Vulnerable Subclass and is scheduling a hearing to

---

[1] The Court is not imposing all of the measures requested by Plaintiffs and will discuss those measures that are omitted with the parties during the hearing scheduled *infra*.

address that request. The Court has considered the following factors in deciding whether to issue the TRO:

> (1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay.

*Ohio Republic Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008).

For purposes of this decision, the Court is accepting the allegations in Plaintiffs' Complaint and its attachments as true without briefing or evidentiary submissions by Defendants. The Court is not making a finding of wrongdoing on the part of any defendant and no defendant is deemed to have waived any defenses to this action. The Court is acting without notice to Defendants because it finds that any delay will increase the risk of serious physical harm to Plaintiffs.

The Court finds that Plaintiffs are likely to succeed on the merits of their claim alleging that jail conditions violate their Eighth and Fourteenth Amendment rights. Plaintiffs' allegations reflect that Oakland County has not imposed even the most basic safety measures recommended by health experts, the Centers for Disease Control and Prevention, and Michigan's Governor to reduce the spread of

COVID-19 in detention facilities. It cannot be disputed that COVID-19 poses a serious health risk to Plaintiffs and the putative class.[2]

Plaintiffs also are likely to suffer irreparable harm absent an injunction, as they face a heightened risk of contracting this life-threatening virus simply as incarcerated individuals and even more so without the imposition of these cautionary measures. Entering an injunction requiring Defendants to adopt the safety precautions set forth below poses no harm to them other than potentially increased costs and energy, which are insufficient to justify a denial of Plaintiffs' motion. *See Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).

Accordingly,

**IT IS ORDERED** that Defendants shall as soon as practicable, or at least within ten (10) days of this Opinion and Order, undertake the following minimum measures:

> (1) Ensure that each incarcerated person receives, free of charge: (a) an individual supply of liquid hand soap and paper towels sufficient to allow regular hand washing and drying each day, and (b) an adequate supply of

---

[2] A spread of the virus among incarcerated persons also poses a grave risk of harm to the jail employees with whom they interact.

disinfectant hand wipes or disinfectant products effective against the COVID-19 virus for daily cleanings;

(2) Ensure that all incarcerated people have no-cost access to hand sanitizer containing at least 60% alcohol where permissible based on security restrictions;

(3) Provide access to showers and clean laundry, including clean personal towels on a regular basis, but at a minimum on a weekly basis;[3]

(4) Ensure that, to the fullest extent possible, all Jail staff wear personal protective equipment, including masks, when interacting with any person or when touching surfaces in cells or common areas;

(5) Ensure, to the fullest extent possible, that all Jail staff wash their hands with soap and water or use hand sanitizer containing at least 60% alcohol both before and after touching any person or any surface in cells or common areas.  Consider allowing staff to carry individual sized bottles while on duty;

(6) Establish protocol through which an incarcerated person may self-report symptoms of COVID-19 infection and to evaluate those symptoms, including temperature monitoring;

(7) Conduct immediate testing for anyone displaying known symptoms of COVID-19;

(8) Provide adequate spacing of six feet or more between people incarcerated, to the maximum extent possible, so that social distancing can be accomplished;

---

[3] At the hearing, the Court will address whether it should set forth a specific frequency for these items after weighing regular Jail practices and any information reflecting the need for more frequency during the COVID-19 pandemic.

(9)  Ensure that individuals identified as having COVID-19, with symptoms of COVID-19, or having been exposed to COVID-19 receive adequate medical care and are properly quarantined in a non-punitive setting, with continued access to showers, mental health services, reading materials, phone and video calling with loved ones, communications with counsel, and personal property (to the extent reasonable and necessary to the inmate's physical and mental well-being).  Such individuals shall remain in quarantine and wear face masks when interacting with other individuals until they are no longer at risk of infecting other people;

(10)  Respond to all COVID-19 related emergencies (as defined by the medical community) within an hour;

(11)  Provide sufficient disinfecting supplies, without cost, so incarcerated people can clean high-touch areas or items (including, but not limited to, phones and headphones) between each use;

(12)  Effectively communicate to all people incarcerated, including low-literacy and non-English-speaking people, sufficient information about COVID-19, measures taken to reduce the risk of transmission, and any changes in policies or practices to reasonably ensure that individuals are able to take precautions to prevent infection;

(13)  Train all staff regarding measures to identify inmates with COVID-19, measures to reduce transmission, and the Jail's policies and procedures during this crisis (including those measures contained in this Order);

(14)  Refrain from charging medical co-pays before treatment is provided to those experiencing COVID-19-related symptoms, including testing;[4]

---

[4] The Court will consider at the hearing whether co-pays may be charged if payment is not required before treatment or testing.

  (15) Waive all charges for medical grievances during this pandemic until further order of the Court[5];

  (16) Cease and desist (a) all use of punitive transfers or threats of transfers to areas of the jail that have higher infection rates (or any other form of threat involving increased exposure to infection) for any infraction whatsoever; and (b) all retaliation in any form, against class members who raise concerns either formally or informally about the health and safety conditions in the Jail.[6]

**IT IS FURTHER ORDERED**, that Defendants shall take the following measures in preparation for the TRO hearing:

  (1) Promptly provide Plaintiffs and the Court with a list of all individuals who are members of the Medically-Vulnerable Subclass as defined in paragraph 94 of Plaintiffs' Complaint, which includes their location, charge and bond status; and,

  (2) Promptly thereafter provide Plaintiffs and the Court with a list of any individuals in the Medically-Vulnerable Subclass who Defendants object to releasing and the basis for that objection.

**IT IS FURTHER ORDERED** that the parties shall appear before the undersigned for a telephonic conference call **on Monday, April 20, 2020 at 11:00**

---

[5] The Court will address at the hearing whether charges for medical grievances should be allowed if payment is not required before a grievance is accepted and addressed.

[6] At the hearing, the Court will address Plaintiffs' request for an injunction restraining Defendants from taking "all punitive measures … against class members who decline to engage in labor on the grounds that such labor represents a threat to their health and safety or the health and safety of other class members."

**a.m.**, and for a telephonic hearing **on Friday, April 24, 2020 at 11:00 a.m.** For both the conference and hearing, Counsel shall call the Court's toll-free conference line at 1-888-808-6929 and use Access Code 8141695.

    **IT IS SO ORDERED**.

s/ Linda V. Parker<br>
LINDA V. PARKER<br>
U.S. DISTRICT JUDGE

Dated: April 17, 2020 at 5:52 p.m.