UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMAAL CAMERON, RICHARD BRIGGS,
RAJ LEE, MICHAEL CAMERON, and
MATTHEW SAUNDERS, individually and
on behalf of all others similarly situated,

                Plaintiffs,                   Civil Case No. 20-10949
                                          Honorable Linda V. Parker
v.

MICHAEL BOUCHARD, CURTIS D. CHILDS,
and OAKLAND COUNTY,

                Defendants.
_____/

## ORDER

This matter is before the Court on the following motions:  (i) Plaintiffs'

Motion for Preliminary Injunction (ECF No. 5); (ii) Plaintiffs' Motion to Certify

Class (ECF No. 6); (iii) Defendants' Motion to Dismiss (ECF No. 30); (iv)

Defendants' Motion for Leave to File a Sur-reply (ECF No. 91); and (v) Plaintiffs'

Motion to Strike (ECF No. 92).  The Court held a hearing with respect to the first

three motions via videoconference on May 4, 6 and 7, 2020, and entered an

Opinion with respect to all of the motions on this date.  Pursuant to that Opinion,

      **IT IS ORDERED** that Defendants' Motion for Leave to File a Sur-Reply

(ECF No. 91) is **DENIED** and Plaintiffs' Motion to Strike (ECF No. 92) is

**DENIED AS MOOT**;

1

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Class

Certification (ECF No. 6) is **GRANTED** and the Court conditionally certifies the

following Class and Subclasses:

- "Jail Class":  defined as all current and future Jail detainees during the course of the COVID-19 pandemic.

- "Pre-trial Subclass":  defined as all current and future persons detained at the Oakland County Jail during the course of the COVID-19 pandemic who have not yet been convicted of the offense for which they are currently held in the Jail.

- "Post-Conviction Subclass":  defined as all current and future persons detained at the Oakland County Jail during the course of the COVID-19 pandemic who have been sentenced to serve time in the Jail or who are otherwise in the Jail as the result of an offense for which they have already been convicted.

- "Medically-Vulnerable Subclass":  defined as all members of the Jail class who also are over the age of sixty (60) or who, regardless of age, experience any of the following underlying medical conditions:  (i) chronic lung disease including chronic obstructive pulmonary disease (e.g., bronchitis or emphysema); (ii) moderate to severe asthma; (iii) serious heart conditions; (iv) immunocompromising conditions including cancer treatment, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS, and  prolonged use of corticosteroids and other immune weakening medications; (v) severe obesity (body mass index [BMI] of 40 or higher); (vi) diabetes; (vii) chronic kidney or liver disease; (viii) metabolic disorders; or (ix) current or recent (last two weeks) pregnancy.

2

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss (ECF

No. 30) is **GRANTED IN PART AND DENIED IN PART** in that it is denied in

all respects, except Defendants Bouchard and Childs are **DISMISSED AS**

**PARTIES**;

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Preliminary

Injunction (ECF No. 5) is **GRANTED** and Defendants shall:

1. Provide each incarcerated person, free of charge, on a bi-weekly basis, two bars of individual hand soap and a hand towel to allow regular hand washing and drying.  Provide unrestricted access to additional hand soap upon an inmate's request.

2. Provide each cell and each dormitory-style housing unit, at no cost, a supply of disinfectant hand wipes or disinfectant products effective against the COVID-19 virus for daily cleanings.  Any disinfectant products shall be provided at the manufacturer's required concentration level and in sufficient quantities for inmates to clean and disinfect the floor and all surfaces of their housing unit.

3. Provide daily access to cleaning supplies at no cost for inmates to clean their cells, including showers, toilets, telephones, and sinks.  Supplies shall be disinfected before being shared between housing cells.

4. Require cleaning of any surface or area shared by four (4) or more inmates, for example tabletops, telephones, door handles, television controls, equipment, and restroom fixtures.  Surfaces and areas shall be cleaned every hour from 7 a.m. to 10 p.m. with bleach-based cleaning agents.

5. Establish a protocol for monitoring and supervising the regular sanitization of housing units, common areas, and surfaces.  Provide guidance to correctional staff to provide them with the

knowledge needed to oversee and assure that cleaning is adequate and effective. Within five (5) business days of this Order, Defendants shall submit a certified report to the Court identifying the procedures implemented to carry out these directives.

6. Provide access to clean showers and clean laundry, including clean personal towels on a regular basis, but at a minimum on a bi-weekly basis.

7. Provide masks for all inmates and staff members. If cotton masks are provided, such masks must be laundered regularly. Users must be instructed on how to use the mask and the reasons for its use.

8. Require all Jail staff to wear personal protective equipment, including masks and gloves, when interacting with any person, distributing items to prisoners (e.g., mail and hygiene supplies), or when touching surfaces in cells or common areas.

9. Ensure, to the fullest extent possible, that all Jail staff wash their hands with soap and water or use hand sanitizer containing at least 60% alcohol both before and after touching any person or any surface in cells or common areas. Consider allowing staff to carry individual sized bottles of the referenced hand sanitizer while on duty.

10. Maintain a protocol through which an incarcerated person may self-report symptoms of COVID-19 infection and to evaluate those symptoms, including temperature monitoring.

11. Within three (3) business days, provide the Court and Plaintiffs with a detailed plan to continue testing all inmates for COVID-19, prioritizing members of the Medically-Vulnerable Subclass, as well as a plan to test all individuals who (i) have access to the housing units or (ii) interact with inmates or with individuals who have access to the housing units.

12. Conduct immediate testing for anyone displaying known symptoms of COVID-19 and submit a weekly list to the Court

and Plaintiffs' counsel indicating (i) the number of tests performed that week and (ii) whether any inmates or Jail staff have tested positive for coronavirus.

13. Provide adequate spacing of six feet or more between people incarcerated, to the maximum extent possible, so that social distancing can be accomplished.

14. Ensure that individuals identified as having COVID-19, with symptoms of COVID-19, or having been exposed to COVID-19 receive adequate medical care and are properly quarantined in a non-punitive setting, with continued access to showers, mental health services, reading materials, phone and video calling with loved ones, communications with counsel, and personal property (to the extent reasonable and necessary to the inmate's physical and mental well-being).  Such individuals shall remain in quarantine and wear face masks and gloves when interacting with other individuals until they are no longer at risk of infecting other people.  Facemasks must be replaced at medically appropriate intervals.

15. Respond to all COVID-19 related emergencies (as defined by the medical community) within an hour.

16. Post signage and information in common areas that provide: (i) general updates and information about the COVID-19 pandemic; (ii) information on how inmates can protect themselves from contracting COVID-19; and (iii) instructions on how to properly wash hands.  Among other locations, all signage must be posted in every housing area and above every sink.  Require staff to provide this information orally to low-literacy and non-English speaking people.

17. Train all staff regarding measures to identify inmates with COVID-19, measures to reduce transmission, and the Jail's policies and procedures during this crisis (including those measures contained in this Order).

18. Suspend co-pays for medical treatment for the duration of the pandemic and encourage all inmates to seek treatment if they are feeling ill.

19. Waive all charges for medical grievances during the pandemic until further order of the Court.

20. Within five (5) business days of this Order, establish and put into effect a policy suspending, to the extent possible, the use of multi-person cells (i.e., with more than two individuals), except where: (i) the person is currently under quarantine, or (ii) a person for whom a medical or mental health professional has documented that particular housing is needed. All housing units utilized shall be configured to permit social distancing, to the maximum extent possible. If dormitory-style housing must be utilized, those areas shall be reconfigured to allow six-feet between inmate beds to the maximum extent possible. Defendants shall submit a report to the Court and Plaintiffs' counsel within seven (7) business days detailing (i) the policy put into effect, (ii) the housing cells occupied, and (iii) the number of inmates in each cell, similar to the Housing Occupancy List introduced at the evidentiary hearing. (ECF No. 68.) Defendants shall submit updated reports as to (i) and (ii) on a weekly basis.

21. Ensure that Plaintiffs' counsel have the ability to promptly communicate with detainees.

22. Within three (3) business days, provide the Court and Plaintiffs' counsel with a list of the members of the Medically-Vulnerable Subclass, which includes inmate identification numbers, ages, any health vulnerabilities, as well as records detailing the instant charges or convictions and any criminal history of the Subclass member. The purpose of this order is to enable the Court to implement a system for considering the release on bond or other alternatives to detention in the Jail for each subclass member. After reviewing the list, the Court will issue a schedule for Defendants to submit the following additional information for each Subclass member: (i) their position on whether the individual should be released on bond; (ii) the

6

reasons why they maintain the individual should not be
released; and (iii) what conditions should be put into place if
bond is granted.

In extraordinary cases like this, federal judges have the authority to release

detainees on bail while their habeas petitions are pending.[1]

Defendants have not sought a bond and the Court finds and holds that no

security need be posted.  *See* Fed. R. Civ. P. 65(c); *Moltan Co. v. Eagle-Picher*

*Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) ("[T]he rule in [the Sixth Circuit]

has long been that the district court possesses discretion over whether to require the

posting of security.").

The injunctive provisions set forth in this Order shall expire forty-five (45)

business days from the date of this Order.  At that time, the Court will review the

record to determine whether it is necessary to extend the Order.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: May 21, 2020

---

[1] *See, e.g.*, *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001); *Dotson v. Clark*, 900
F.2d 77, 79 (6th Cir. 1990); *Savino v. Souza*, No. 20-10617, 2020 WL 1703844, at
*8-9 (D. Mass. Apr. 8, 2020).