UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMAAL CAMERON, RICHARD BRIGGS,
RAJ LEE, MICHAEL CAMERON, and
MATTHEW SAUNDERS, individually and
on behalf of all others similarly situated,

        Plaintiffs,                      Civil Case No. 20-10949
                                                         Honorable Linda V. Parker

v.

MICHAEL BOUCHARD, CURTIS D. CHILDS,
and OAKLAND COUNTY,

        Defendants.
_____/

## OPINION AND ORDER DENYING DEFENDANTS' EMERGENCY MOTION FOR STAY PENDING APPEAL

This matter is before the Court on Defendants' Emergency Motion to Stay the Court's May 21, 2020 Order, which followed the Court's Opinion on the same date granting Plaintiffs' Motion for Preliminary Injunction. Defendants have appealed the Court's decision.[1] Plaintiffs filed a response to Defendants' Emergency Motion to Stay on May 26.

The Federal Rules of Civil Procedure grant district courts the power to stay an injunction pending appeal:

---

[1] Defendants also filed an emergency motion to stay in the Sixth Circuit, which was denied. Order, *Cameron v. Bouchard*, No. 20-1469 (6th Cir. May 26, 2020), ECF No. 22.

> While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights. . . .

Fed. R. Civ. P. 62(c). In deciding whether to issue a stay pursuant to Rule 62(c), the court must consider the same factors analyzed when issuing injunctive relief:

> "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay."

*SEIU Local 1 v. Husted*, 698 F.3d 341, 343 (6th Cir. 2012) (per curiam) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id*. The moving party has the burden of demonstrating entitlement to a stay. *Id*. (citing *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)).

**I.     Likelihood that Defendants Will Prevail on the Merits of Their Appeal**

    **A.     The Court's Finding that the Jail Class is Likely to Prevail on their 28 U.S.C. § 1983 Claim**

Defendants argue that they are likely to prevail on the merits of their appeal as to Plaintiffs' § 1983 claim because "portions" of the Order "exceed[] the recommendations of the CDC." (ECF No. 97 at Pg ID 3078.) Defendants do not

2

identify the specific provisions of the Order that they believe exceed the CDC's guidelines. Regardless, as Plaintiffs explain in response to Defendants' motions to stay here and in the Sixth Circuit, the provisions in the Order not expressly repeating what the CDC recommends are designed to accomplish the goals set forth by the CDC (e.g. good hygiene, a clean environment, and social distancing) and to monitor implementation.

Defendants further contend that they will likely prevail on appeal because the Court's Order otherwise only requires the Jail to "implement its pre-existing policies." (*Id*.) As the Court previously explained, the record suggests that Defendants have failed to implement many of these policies, (*see id*. at 3039-42, 3044 n.44), and as Defendants previously conceded, federal courts "possess the authority to implement whatever remedy is necessary to rectify constitutionally infirm practices, policies or conduct," (*see* ECF No. 30 at Pg ID 831 (quoting *Kendrick v. Bland*, 740 F2d 432, 438 (6th Cir. 1984)).)

### B. The Court's Finding that the Medically-Vulnerable Subclass is Likely to Prevail on their Habeas Petition

Defendants contend that "the requirements of the PLRA are applicable to Plaintiffs' claims and neither Plaintiffs nor the Court have authored any binding authority establishing a federal district court has authority to release a state inmate under § 1983." (ECF No. 97 at Pg ID 3078.) This argument is inapposite, however, because—as stated in its May 21 Opinion—"the Court has concluded

3

that § 2241 is a proper avenue to pursue Plaintiffs' request for release of the Medically-Vulnerable Subclass." (ECF No. 93 at Pg ID 3052.)

Defendants seem to also argue that they are likely to prevail on appeal because "no federal court has granted habeas for state court prisoners due to concerns regarding COVID-19[.]" (ECF No. 97 at Pg ID 3071.) As an initial matter, while other courts may have found barriers to state prisoners prevailing on their § 2241 petitions, a number of courts—including those heavily relied upon by Defendants—agree with this Court that habeas is an available remedy. *See, e.g., Mays v. Dart*, No. 20 C 2134, 2020 WL 1987007, at *14 (N.D. Ill. Apr. 27, 2020); *Money v. Pritzker*, -- F. Supp. 3d 00, 2020 WL 1820660, at *9 (N.D. Ill. Apr. 10, 2020). Critically, Defendants fail to demonstrate a likelihood of prevailing on appeal where those procedural hurdles have been overcome and where the fact of the petitioner's confinement is unconstitutional. Moreover, the current pandemic involving a highly contagious and deadly virus presents unusual and exceptional circumstances which may require an unusual and exceptional response.

### C. Exhaustion

#### 1. With Respect to the § 2241 Petition Brought by the Medically-Vulnerable Subclass

Defendants maintain that, on appeal, they likely will prevail on their argument that Plaintiffs did not properly exhaust available state court remedies prior to seeking federal habeas relief. (ECF No. 97 at Pg ID 3072-73.) Defendants

4

contend that the Sixth Circuit should decide whether exhaustion is a pre-requisite for state prisoners seeking habeas in the COVID-19 context before Defendants should be required to comply with the Court's May 21 Order. (*Id.*)

In its May 21 decision, the Court recognized that petitioners seeking relief under § 2241 must exhaust *available* state court remedies. (*See* ECF No. 93 at Pg ID 3017 (citing *Little v. Hopkins*, 638 F.2d 953, 954 (6th Cir. 1981).) For the reasons the Court explained, the state court remedies Defendants have identified are not in fact available for the Medically-Vulnerable Subclass to pursue the relief sought here, whether they are fortunate enough to have counsel or not. While some inmates have been able to secure relief through the state court system (this includes the inmates whose materials were submitted during the evidentiary hearing),[2] this does not mean that they have done so through "[a] standard review

---

[2] While the Court struck Defendants' supplemental brief because briefing had been expressly limited to facilitate the efficient and expeditious resolution of the parties' pending motions, nothing precluded Defendants from submitting the materials attached to their brief as evidence during the evidentiary hearing, which Defendants in fact did in part. (*See* Defs.' Hr'g Exs. D, E, ECF Nos. 69, 70.) In its preliminary injunction decision, the Court addressed most of that evidence. It did not address the statute applied in Inmate Michael Doyle's case, Mich. Comp. Laws § 771.3g, because Mr. Doyle's was a unique case. (*See* Defs.' Hr'g Ex. D, ECF No. 69 at Pg ID 2343.) He was "physically … incapacitated due to [] medical condition[s] that render[ed him] unable to perform activities of basic daily living, and … require[d] 24-hour care." Mich. Comp. Laws § 771.3g. Although at greater risk of experiencing severe COVID-19 outcomes, including death, few medically-vulnerable inmates will satisfy the requirements for relief under the provisions of Section 771.3g.

5

process" where such relief has been granted "through those remedies in the past." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999).

Moreover, the Supreme Court has stated that the exhaustion requirement will be waived "'in rare cases where exceptional circumstances of peculiar urgency are shown to exist.'" *Rose v. Lundy*, 455 U.S. 509, 515-16 (1982) (quoting *Ex parte Hawk*, 321 U.S. 114, 117 (1944)). If the current pandemic caused by a highly contagious and deathly virus is not such a case, the Court cannot imagine the case that would be deemed one of "peculiar urgency."

For these reasons, the Court cannot conclude that Defendants are likely to prevail on appeal with respect to their exhaustion argument as it relates to the § 2241 petition brought on behalf of the Medically-Vulnerable Subclass.

### 2. With Respect to the 28 U.S.C. § 1983 Claim Brought by the Jail Class

For the reasons explained in the Court's May 21 Opinion, the Court concludes that administrative remedies are not available to remedy the conditions that place the members of the Jail Class at heightened risk of contracting coronavirus and to seek the implementation of measures to improve those conditions. The evidence reflects that corrections officers have refused to provide inmates with grievance forms and have threatened to move inmates from housing areas without infection to areas where inmates have been diagnosed with coronavirus. Notably, while Captain Childs testified that eight grievances

6

complaining about the Jail's unsanitary conditions had been submitted since January 1, 2020 (5/6/20 Hr'g Tr., ECF No. 65 at Pg ID 2188-89), the evidence presented through the individuals who actually witnessed those conditions was that they remained unchanged as of mid-April. And to the extent § 1983 is deemed to be the more appropriate avenue for the Medically-Vulnerable Subclass to seek release, relief is not available through the Jail's grievance process.

## II. Likelihood that Defendants or the Public Interest Will be Irreparably Harmed Absent a Stay

Items 1-21 of the Court's Order require Defendants to implement numerous measures intended to limit the Jail Class members' exposure to COVID-19, as well as limit the transmission of the virus and treat inmates' who test COVID-positive. (ECF No. 94 at Pg ID 3060-63.) Defendants contend that the Court's Order "places extensive administrative requirements" on Defendants. (ECF No. 97 at Pg ID 3080.) But "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended … are not enough" to demonstrate irreparable harm absent a stay. *Griepentrog*, 945 F.2d at 154 (citation omitted). Defendants further contend that "[a]ny time a state is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (ECF No. 97 at Pg ID 3079 (citing *Maryland v. King*, 567 U.S. 1301 (2012)).) This argument fails, however, because Defendants do not identify any statute hampered by the execution of the Court's Order.

7

Item 22 of the Court's Order requires Defendants to produce a list detailing information regarding the Medically-Vulnerable Subclass. (ECF No. 94 at Pg ID 3063.) The Court will thereafter consider—based on, among other factors, public safety and an inmate's criminal history—whether release or other alternatives to confinement are warranted. The production of this list harms neither Defendants nor the public. *See Groseclose v. Dutton*, 788 F.2d 356, 359 (6th Cir. 1986) (per curiam) (explaining that the Sixth Circuit has "consistently rejected attempts to obtain review of orders requiring the submission of remedial plans).

For these reasons, it is unlikely that Defendants or the public interest will be harmed absent a stay.

### III. Prospect that Others will be Harmed if the Court Grants the Stay

Defendants maintain that members of the Jail Class will not be substantially injured if the matter is stayed pending appeal as the COVID-19 testing of inmates reflects few cases of the virus within the Jail. Defendants believe that the order requiring them to continue COVID-19 testing reveals the Court's trust in the accuracy of their testing. The Court in fact is doubtful that the test results are accurate, as stated in its May 21 decision:

> These test results are not a definitive sign that a large percentage of the Jail population is free of the virus. As the CDC has recognized, the current tests for coronavirus—which have not gone through the FDA's approval process—may provide false negative results. *See, e.g., Coronavirus Disease 2019 (COVID-19): Fact*

8

> *Sheet for Patients*, *supra* note 36. According to one news article, approximately 15 percent of all tests conducted in the United States return false negatives, meaning that of every 100 individuals infected with COVID-19, 15 are told they do not have it. *See This is How 'False Positives' and 'False Negatives Can Bias COVID-19 Testing*, Forbes (May 7, 2020), https://www.forbes.com/sites/startswithabang/2020/05/07/this-is-how-falsepositives-and-false-negatives-can-bias-covid-19-testing/#4f6cfae21743. Therefore, 70 of the 465 Jail inmates who tested negative since May 1, may in fact be COVID-19 positive.

(ECF No. 93 at Pg ID 3013-14.) The Court directed Defendants to continue testing Jail inmates not because it is confident in the results, but because testing is but one (potentially imperfect) tool to confront the challenges of COVID-19. The record suggests that testing—without consistent and effective quarantining and sanitation procedures, as the Court found is the case here—may do little to curb the spread of the virus.

For this reason, and because COVID-19 is highly contagious and poses a threat of serious illness and death, the Court concludes that the Jail Class, and particularly members of the Medically-Vulnerable Subclass, are likely to suffer irreparable harm if the Court's Order is stayed pending appeal.

9

## IV.  Conclusion

Having balanced the relevant factors, the Court concludes that its May 21, 2020 Order should not be stayed pending appeal.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Stay (ECF No. 97) is **DENIED**.

**IT IS SO ORDERED**.

s/ Linda V. Parker<br>
LINDA V. PARKER<br>
U.S. DISTRICT JUDGE

Dated: June 4, 2020