UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMAAL CAMERON; RICHARD BRIGGS;
RAJ LEE; MICHAEL CAMERON; MATTHEW
SAUNDERS, individually and on behalf of all
others similarly situated,

      Plaintiffs,

               v.

MICHAEL BOUCHARD, in his official capacity
as Sheriff of Oakland County; CURTIS D.
CHILDS, in his official capacity as Commander of
Corrective Services; OAKLAND COUNTY,
MICHIGAN,

      Defendants.

Case No.  2:20-cv-10949-LVP-MJH

Hon. Linda Parker

**PLAINTIFFS' RESPONSE TO DEFENDANTS' 12(B)(1)
MOTION TO DISMISS**

# TABLE OF CONTENTS

Index of Authorities ............................................................. ii

Introduction ..................................................................... 1

Background ...................................................................... 2

Legal Standard .................................................................. 5

Argument........................................................................ 6

    I.     The Sixth Circuit Did Not Dismiss Plaintiffs' Injunctive Claims or Their Habeas Claims, and Defendants' Arguments Misunderstand the Nature of Preliminary Injunction Proceedings........................................................ 6

    II.    Plaintiffs' Claims Are Not Moot, So This Court Retains Jurisdiction........................................................ 10

          A.    The Fact That Some (But Not All) Named Plaintiffs Have Been Released Does Not Render This Class Action Moot. ............................................ 11

          B.    Defendants' New Evidence Does Not Establish a Change of Factual Circumstances Sufficient to Prove Mootness, and Does Not Withstand Minimal Scrutiny Anyhow........... 17

Conclusion ..................................................................... 21

# INDEX OF AUTHORITIES

## Cases

*Am. Civil Liberties Union of Ky. v. Grayson Cty., Ky.*, 591 F.3d 837, 843 (6th Cir. 2010)..............................................................13

*Barry v. Corrigan*, 79 F. Supp. 3d 712, 727 (E.D. Mich. 2015) ............................13

*Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 550 (6th Cir. 2003)........................11

*Butler v. Suffolk County*, 289 F.R.D. 80, 91 (E.D.N.Y. 2013) ...............................12

*Cameron v. Bouchard*, No. 20-1469, __ F. App'x __, 2020 WL 3867393 (6th Cir. July 9, 2020).............................................................1

*Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp*, 511 F.3d 535, 542 (6th Cir. 2007) ...........................................................6

*Christian Schmidt Brewing Co. v G. Heileman Brewing Co,* 753 F.2d 1354, 1356 (6th Cir. 1985).............................................................7

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ...................................................16

*County of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991) ..................................11

*Dellis v. Corr. Corp. of Am.*, 257 F.3d 508 (6th Cir. 2001) ...................................13

*Gerstein v. Pugh*, 420 U.S. 103, 110–11 n. 11 (1975)...........................................11

*Gooch v. Life Investors Ins. Co. of Am.,* 672 F.3d 402, 433 (6th Cir. 2012)............8

*Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012) ............6

*Harmon v. Holder*, 758 F.3d 728, 732–33 (6th Cir. 2014)......................................6

*Helling v. McKinney*, 509 U.S. 25, 33 (1993) ........................................................15

*Kensu v. Haigh*, 87 F.3d 172 (6th Cir. 1996).........................................................13

*Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979) .............................................10

*Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010) ...............................................12

*Sumpter v. Wayne County*, 868 F.3d 473, 490 (6th Cir. 2017)................................13

*Tri-County Wholesale Distribs. v Wine Group, Inc.* 565 F. App'x 477, 482 (6th Cir. 2012)...............................................................7

*United States v. Edward Rose & Sons,* 384 F.3d 258, 261 (6th Cir. 2004)..............7

*United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)....................................6

*Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395 (1981) ...........................................6

*William G. Wilcox, D.O. v United States,* 888 F.2d 1111, 1114 (6th Cir. 1988) ......7

*Wilson v. Gordon*, 822 F.3d 934, 946 (6th Cir. 2016)............................................12

## Statutes

42 U.S.C. § 1983 ....................................................................................2, 4

## INTRODUCTION

Defendants move to dismiss this lawsuit on the grounds that this Court lacks jurisdiction because the dispute has become moot and because Plaintiffs lack standing.  The motion is baseless and should be denied.

Most of Defendants' arguments are rooted in the Sixth Circuit's decision vacating the preliminary injunction issued by this Court, which Defendants claim dismissed Plaintiffs' injunctive and habeas claims.  *See Cameron v. Bouchard*, No. 20-1469, __ F. App'x __, 2020 WL 3867393 (6th Cir. July 9, 2020) (ECF No. 141). But a decision on a preliminary injunction is just that: preliminary.  Defendants' perseverate mischaracterization that the Sixth Circuit issued a final ruling on the merits both misreads the decision and misunderstands fundamental rules of civil procedure.

Defendants' additional arguments are equally meritless.  Their argument that this dispute has become moot because four named Plaintiffs have been released from the Jail fail for three reasons.  First, one Plaintiff (Michael Cameron) remains detained at the Jail.  Second, this Court has already conditionally certified the class, which eliminates any mootness problem.  Third, it is well established that classes consisting of inherently transitory incarcerated populations in jails survive the release of named plaintiffs in light of the fact that the issues are capable of repetition and otherwise likely to evade judicial review.

Finally, Defendants' attempt to rely on factual developments arising since the filing of this lawsuit do nothing to demonstrate that this controversy has become moot. Furthermore, the *actual* facts show that Defendant's factual assertions ignore reality and instead demonstrate their continued indifference to the grave threats that COVID-19 poses to the lives and well-being of the people incarcerated at the Jail.

## BACKGROUND

On April 17, 2020, Plaintiffs filed a class action Petition for Writ of Habeas Corpus and Complaint for Injunctive and Declaratory Relief (ECF No. 1). Counts 1 and 2 of the Petition and Complaint sought declaratory and injunctive relief requiring Defendants to take various measures to combat the spread of COVID-19 and render the Jail safer for the people incarcerated there in the midst of the COVID-19 pandemic. Counts 3 and 4 sought a change of custody of a subclass of medically vulnerable detainees from the Jail pursuant either to the Court's habeas jurisdiction or as a remedy under 42 U.S.C. § 1983. Simultaneously, Plaintiffs also filed an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction (ECF No. 5), and a Motion for Class Certification (ECF No. 6).

On the same day, this Court entered a Temporary Restraining Order (ECF No. 12). On April 23, under Rule 12(b)(6), Defendants filed a document (ECF No. 30) entitled Motion to Dismiss Petition for Habeas Corpus [and] Claims Against

2

[Defendants] Bouchard and Childs and Response to Motion for TRO.  On April 27, Plaintiffs filed an omnibus response (ECF No. 33) to that document.

This Court held a preliminary injunction hearing over portions of three days (May 4, 6, and 7), at which each side presented only two witnesses.  No depositions were taken and no formal discovery was conducted between the parties prior to the hearing, although some information and documents were exchanged on a voluntary basis.

On May 12, Defendants (belatedly) filed a response (ECF No. 82) to Plaintiffs' Motion for Class Certification.  Plaintiffs filed a reply on May 18 (ECF No. 90).

On May 21, this Court issued an Opinion (ECF No. 93) and Order (ECF No. 94).   The Court: (1) granted Plaintiffs' Motion for Class Certification, and provisionally certified the class and three sub-classes, *see* ECF No. 94 at 2; (2) denied most of Defendants' Motion to Dismiss, *see* ECF No. 94 at 3;[1] (3) granted Plaintiffs' Motion for Preliminary Injunction, *see* ECF No. 94 at 3–4; and (4) ordered Defendants to produce a list of medically vulnerable individuals incarcerated at the

---

[1] The Court initially granted Defendants motion in small part, by dismissing Defendants Bouchard and Childs on the grounds that they were sued in their official capacity, whereas Oakland County, the county that employs them, was also named.  However, on reconsideration, the Court subsequently revised this portion of the decision and reinstated Defendants Bouchard and Childs to this suit in their official capacity.  *See* ECF No. 99.

Jail, *see* ECF No. 94 at 6 ¶ 22.  In so ordering, this Court reached several conclusions that are relevant here.  First, this Court held that it has jurisdiction under its habeas jurisdiction to release medically vulnerable subclass members from the Jail and that any such claim was not barred by failure to exhaust state remedies.[2]  ECF No. 93 at 28–34.  Second, this Court held that Plaintiffs' § 1983 claims are not barred for failure to exhaust administrative remedies.  ECF No. 93 at 34–37.  Third, this Court held that this action satisfied all of the requirements for class certification under Rule 23(b)(2).  ECF No. 93 at 37–46.  Fourth, this Court held that, based on the record before it, Plaintiffs were likely to prevail on their claim that they were being detained under circumstances that violated class members' Eighth and Fourteenth Amendment rights.  ECF No. 93 at 47–61.  Fifth, this Court held, on the record before it, that it was impossible for the Jail to take measures that could protect the health of members of the medically vulnerable subclass.  ECF No. 93 at 56–61.

Defendants appealed this Court's issuance of a preliminary injunction.  On appeal, Defendants repeatedly argued during the appeal that this Court lacked jurisdiction to grant habeas relief.  On July 9, the Sixth Circuit issued an unpublished decision vacating the preliminary injunction.  *Cameron,* 2020 WL 3867393 (ECF No. 141).  But, in vacating the preliminary injunction, the Sixth Circuit rejected *only*

---

[2] In the alternative, this Court held that it has the authority to change the custody of inmates who cannot be kept safe as an appropriate remedy under 42 U.S.C. § 1983 without needing to resort to a three-judge court.  ECF No. 93 at 66–70.

the fourth holding described above, i.e., this Court's conclusion that the record before it at the preliminary injunctive stage demonstrated that Plaintiffs have a likelihood of success on the merits.  *See Cameron,* 2020 WL 3867393 at *8 ("[W]e agree with Defendants that Plaintiffs are unlikely to succeed on the merits of their Eighth and Fourteenth Amendment claims."); *id.* at *4 n.1 (declining to address other issues).  Thus, the Sixth Circuit did not disturb this Court's conclusions that it has jurisdiction over all of Plaintiffs' claims,[3] that their claims are not barred by failure to exhaust, that the class should be certified, or that the Jail was unable to keep medically vulnerable sub-class members safe from COVID-19. And, although the Sixth Circuit concluded that Plaintiffs were unlikely to succeed on the merits of their Eighth and Fourteenth Amendment claims based on the record before it, the Sixth Circuit did not state that Plaintiffs' complaint failed to state a claim or that this Court lacked jurisdiction.

## LEGAL STANDARD

In ruling on a motion to dismiss, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis,*

---

[3] In fact, the Sixth Circuit preliminarily affirmed this Court's holding that it has jurisdiction over the habeas claims.  *See Cameron,* 2020 WL 3867393 at *4 n.1 (describing Defendants' arguments about habeas jurisdiction as "inconsistent with our recent decision in *Wilson* [*v. Williams*, 961 F.3d 829 (2020)]").

*Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012) (citation omitted).  When, as here, a motion to dismiss is based on mootness, "the party seeking mootness[] bears a heavy burden to prove that it applies." *Harmon v. Holder*, 758 F.3d 728, 732–33 (6th Cir. 2014); *see United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) (same).

## ARGUMENT

## I.   The Sixth Circuit Did Not Dismiss Plaintiffs' Injunctive Claims or Their Habeas Claims, and Defendants' Arguments Misunderstand the Nature of Preliminary Injunction Proceedings.

Defendants' Motion to Dismiss is largely based upon the erroneous premise that the Sixth Circuit "dismissed" Plaintiffs' claims for injunctive relief.  *See, e.g.,* Def. MTD Br. (ECF No. 149) at 8–9.  This mischaracterizes the Sixth Circuit's opinion and miscomprehends the function of a preliminary injunction hearing, which is merely to address whether to preserve the relative positions of the parties until a trial on the merits can be held.  *Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395 (1981).

In deciding whether to grant a preliminary injunction, courts consider four factors: 1) whether the movant has a strong likelihood of success on the merits; 2) whether the movant would suffer irreparable injury without the injunction; 3) whether issuance of the injunction would cause substantial harm to others; and 4) whether the public interest would be served by the issuance of the injunction. *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp,* 511 F.3d 535, 542 (6th Cir. 2007).  These determinations are generally made with evidence that is less

complete than evidence at a trial on the merits. *Camenisch*, 451 U.S. at 395. The parties generally will not have had the benefit of a full opportunity to present their cases nor of a final judicial decision based on a full record addressing the final merits of the controversy. *Id.*

Because of this, findings of fact and conclusions of law made in granting a preliminary injunction are not binding at a trial on the merits, or on a motion for summary judgment. *United States v. Edward Rose & Sons,* 384 F.3d 258, 261 (6th Cir. 2004); *William G. Wilcox, D.O. v United States,* 888 F.2d 1111, 1114 (6th Cir. 1988). This includes findings made by an appellate court in reviewing a district court's decision to grant a preliminary injunction. *See, e.g.*, *Tri-County Wholesale Distribs. v Wine Group, Inc.* 565 F. App'x 477, 482 (6th Cir. 2012) (noting that an appellate court's "conclusions of law" when reviewing a preliminary injunction "are not binding at trial on the merits"); *see also Wilcox*, 888 F.2d at 1114 & n.3 (concluding that district court properly denied a preliminary injunction due in part to an unlikelihood of success on the merits, but nonetheless reversing the district court for failing to assess the merits anew at the summary judgment stage). In reviewing a preliminary injunction, the Sixth Circuit has expressly noted that appellate courts should refrain from a review of the final merits since at that stage, the parties have not yet presented their "full proof of the facts." *Christian Schmidt Brewing Co. v G. Heileman Brewing Co,* 753 F.2d 1354, 1356 (6th Cir. 1985). As

such, it is "well established" that a decision regarding a preliminary injunction necessarily makes only a "prediction" about what a final merits ruling might be, and does so on a limited record. *Gooch v. Life Investors Ins. Co. of Am.,* 672 F.3d 402, 433 (6th Cir. 2012). It is not itself a final merits ruling. *Id.* Thus, based on the nature of a preliminary injunction hearing, a hearing on the merits must still occur after the parties have had a full opportunity to seek discovery, regardless of the results of the preliminary hearing.

These admonitions about the tentative nature of a ruling and record at the preliminary injunctive stage apply with full force here. The Sixth Circuit's decision in this case cites "insufficient" evidence presented by Plaintiffs, *Cameron*, 2020 WL 3867393 at *5, and makes findings based upon Defendants' evidence—evidence that Plaintiffs were not fully able to test and examine due to the limited scope of the preliminary injunction hearing and which may well be undermined and discredited after full discovery. For example, the Sixth Circuit accepted Defendants' representations that they distributed a memo to the Jail staff about cleaning procedures, stopped visitation, initiated new arrest screenings, initiated a release program, quarantined new arrestees for 14 days, quarantined inmates experiencing symptoms of COVID-19, checked quarantined inmates three times a day, placed inmates that tested positive in COVID-19 positive cells, offered masks and medical treatments to all inmates, cancelled group activities, used prepackaged meals for

food service, sanitized and disinfected cells, provided access to DMQ (and found that DMQ is effective against COVID-19), promoted social distancing, and provided access to testing. *Id.* at *5. Many of these findings, particularly the findings regarding the Jail's implementation of quarantine practices and procedures, are disputed by Plaintiffs, who have not yet had an opportunity to fully investigate Defendants' assertions via the discovery process.

The Sixth Circuit also relied on gaps in Plaintiffs' preliminary evidence, finding, for example, that Plaintiffs did not produce evidence that the numerous cells that remained empty could be safely occupied and were thus left empty out of the Jail's disregard for the risks of COVID-19. *Id.* at *6. Similarly, the Court found that Plaintiffs did not show that Defendants' policy of transferring people to the main Jail caused any particular class member to be put at risk, or that the Jail's C-Block was not quarantined after an inmate who tested positive for COVID-19 was placed there. *Id.* at *7. Plaintiffs anticipate that they will be able to fill in these evidentiary gaps and undermine Defendants' assertions at trial and after full discovery.

Finally, the Sixth Circuit explicitly declined to consider any evidence that occurred *after* the preliminary injunction was issued. *Id.* at *16–17 ("Our task . . . is to review the record that was before the district court at the time the preliminary injunction was entered.") Thus, the Sixth Circuit has (correctly) made no findings regarding whether permanent injunctive relief is appropriate based on troubling facts

9

that have continued to emerge about the Jail's disregard of the health and safety of class members.  As such, discovery and, potentially, a trial on the merits, remain necessary to determine whether permanent injunctive relief is appropriate.

In sum, the Sixth Circuit's decision denying a preliminary injunction neither purported to render, nor could it have rendered, a decision on the ultimate merits of this dispute.  Thus, it simply is not true that Plaintiffs' claims for habeas and injunctive relief have been dismissed—no matter how many times Defendants insist otherwise.

## II.    Plaintiffs' Claims Are Not Moot, So This Court Retains Jurisdiction.

A case becomes moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979) (citation omitted).  Defendants' arguments come nowhere close to satisfying their "heavy burden," *Harmon*, 758 F.3d at 732, of showing that the issues here are no longer live.  Their argument that the named Plaintiffs' claims are moot because they have been released simply ignores that one named plaintiff (Michael Cameron) has *not* been released.  Their argument also ignores that this matter is a class action involving an inherently transitory class of incarcerated people and thus cannot be mooted by releasing the named Plaintiffs.  Finally, their argument that the factual circumstances have changed because COVID-19 no longer

constitutes a risk to class members comes nowhere close to satisfying Defendants' "heavy burden" of showing that the case has become moot due to factual changes.

### A. The Fact That Some (But Not All) Named Plaintiffs Have Been Released Does Not Render This Class Action Moot.

It has been settled law for decades that class actions seeking injunctive relief are not mooted simply because the named plaintiffs' individual claims have become moot. "Our cases leave no doubt . . . that by obtaining class certification, plaintiffs preserved the merits of the controversy for our review." *County of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991). Indeed, in cases specifically involving classes composed of transitory jail populations, the Supreme Court has repeatedly held "that 'the termination of a class representative's claim does not moot the claims of the unnamed members of the class.'" *Id.* (quoting *Gerstein v. Pugh*, 420 U.S. 103, 110– 11 n. 11 (1975)); *see Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 550 (6th Cir. 2003) (dismissing deceased inmate's claim as moot in an individual action but noting that the result would be different if the case had been a class action).

Similar principles apply, especially in class actions involving inherently transitory jail populations, when the federal district court has not yet certified the class at the time when named plaintiffs' claims become moot. For example, in *Gerstein*, the named plaintiffs were pre-trial inmates who alleged that their right to a prompt hearing on probable cause was being denied. 420 U.S. at 111 n.11. The record did not indicate that any of their claims had not been mooted by the time of

certification.  The Supreme Court explained that certification of the class was still proper because of the certainty that other class members would encounter similar conditions and that the transitory nature of their detention would render their claims "distinctly capable of repetition yet evading review." *Id.* (internal quotation marks omitted).

In applying this "inherently transitory" exception to the mootness requirement, the Sixth Circuit has explained that the exception applies so long as "there is uncertainty about whether a claim will remain alive for any given plaintiff long enough for the district court to certify the class." *Wilson v. Gordon*, 822 F.3d 934, 946 (6th Cir. 2016) (emphasis omitted) (quoting *Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010)).   And such uncertainty is particularly present in classes involving jail populations because "[a]n individual incarcerated in a county jail may be released for a number of reasons that he cannot anticipate." *Id.* (quoting *Olson*, 594 F.3d at 583); *see Butler v. Suffolk County*, 289 F.R.D. 80, 91 (E.D.N.Y. 2013) (noting that the inherently transitory exception applies to classes of "inmates [who] are either pretrial detainees or [people] serving sentences of one year or less").

A straightforward application of these principles makes clear that the claims at issue here are not moot.  As a threshold matter, Plaintiff Michael Cameron *still* has not been released—a fact the Jail simply ignores.  His claim, therefore, plainly is not moot. *See Am. Civil Liberties Union of Ky. v. Grayson Cty., Ky.*, 591 F.3d

12

837, 843 (6th Cir. 2010) ("The presence of one party with standing is sufficient.");

*Barry v. Corrigan*, 79 F. Supp. 3d 712, 727 (E.D. Mich. 2015) (fact that one named

plaintiff's claim was moot was irrelevant when others' claims were not).

In any event, by the Jail's own account, *see* MTD Br. at 18 (recounting release

dates), Plaintiffs Raj Lee, Richard Briggs, and Jamaal Cameron, all also remained

detained on May 21 when this Court conditionally certified the class.   "[B]y

obtaining class certification, plaintiffs preserved the merits of the controversy for

[judicial] review."   *Riverside*, 500 U.S. at 51.   Finally, even if this Court had *not*

conditionally certified the class, this action *still* would be justiciable because it

involves the classic example of an inherently transitory class, namely jail inmates

who "may be released for a number of reasons that [they] cannot anticipate."   *Wilson*,

822 F.3d at 946 (quoting *Olson*, 594 F.3d at 583); *see Gerstein*, 420 U.S. at 111 n.11.

By contrast, most of the cases relied upon by Defendants for the proposition

that this case has become moot due to the release of some of the named Plaintiffs

were not class actions at all.   *See* MTD Br. at 17–20 (relying on *Dellis v. Corr. Corp.*

*of Am.*, 257 F.3d 508 (6th Cir. 2001) and *Kensu v. Haigh*, 87 F.3d 172 (6th Cir.

1996).   And *Sumpter v. Wayne County*, 868 F.3d 473, 490 (6th Cir. 2017), unlike

this case, involved a plaintiff who did not even have standing to seek injunctive relief

*at the time she filed the underlying class action lawsuit* because the harm she alleged

(unconstitutional strip searches) had already been completed by the time she filed.

*See Sumpter*, 868 F.3d at 491 (distinguishing *Gerstein* and similar cases on the grounds that those cases "had a live, actionable claim for injunctive relief at the time they filed suit"). By contrast, here, Plaintiffs all alleged that they were suffering from the underlying constitutional violations—perilous exposure to risks of infection from COVID-19—at the time they filed suit.

Defendants' response to *Gerstein* and its progeny is difficult to understand, but they appear to argue that the Sixth Circuit's decision on appeal of the preliminary injunction somehow held that Plaintiffs lacked standing from the outset. *See* MTD Br. at 20. This argument is doubly flawed. First, the argument appears to be nothing more than a repackaged version of their argument that a decision on a preliminary injunction is dispositive of the ultimate merits of the underlying lawsuit. As explained above, *see supra*, Section I, that argument is incorrect. That is so both because *any* decision on a preliminary injunction is premised on a limited record that predates full discovery and because this *particular* decision was based on conclusions and observations about the record that can be addressed through discovery and at trial.

Second, Defendants mistake an appellate ruling that addressed the preliminary merits of a claim for a ruling that addresses standing. But the Sixth Circuit said

nothing at all about standing; the word "standing" does not appear in the decision.[4] *See Cameron*, 2020 WL 3867393.  And Plaintiffs unquestionably pleaded that they suffered an injury (exposure to a deadly virus), that the exposure was proximately caused by the Jail's actions and inaction, and that the injury could be redressed by the remedies sought.  That establishes standing.  *See, e.g.*, *Sutton*, 419 F.3d at 571 (analyzing and agreeing with a plaintiff's argument that "an increased risk of disease has been recognized by federal courts as an injury in fact sufficient to confer Article III standing").

Furthermore, in the particular context of allegations involving risks to the health of incarcerated people, it is "plainly" established "that a remedy for unsafe conditions need not await a tragic event."  *Helling v. McKinney*, 509 U.S. 25, 33 (1993).  Thus, an incarcerated plaintiff establishes standing, as Plaintiffs have done here, by alleging that they face an increased risk of exposure to a disease or hazardous condition that could be alleviated by greater preventative measures taken by their jailor.  *See id.* at 35 (holding that prisoner lawsuit could proceed based on allegations of exposure to a dangerous condition, while recognizing that the question of whether "prison officials are deliberately indifferent to [the prisoner's] plight"

---

[4] Indeed, because a Court has an independent duty to verify that standing exists, if anything the Sixth Circuit's decision actually demonstrates that Plaintiffs *do* have standing.  *See Sutton v. St. Jude Med. S.C.*, 419 F.3d 568, 573 (6th Cir. 2005) (noting that "by reaching the merits of the plaintiff's claims [a court] clearly found a sufficient injury in fact to confer Article III standing").

was a separate question to be resolved on the merits on remand); *see generally Sutton*, 419 F.3d at 574 (recognizing, when analyzing whether a plaintiff has standing, that the question of whether the plaintiff "is likely to prevail on the merits is not a proper consideration at this time"). The question of whether that increased risk is unconstitutional is a merits question that cannot properly be raised in a 12(b)(1) motion.

Finally, Defendants' reliance on *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), is meritless for reasons similar to those just discussed. *Lyons* involved a plaintiff who sought injunctive remedy based on having had an unconstitutional chokehold used against him in the past. The Court held that Lyons lacked standing to bring such a claim on the grounds that the prior use of a chokehold did not establish a likelihood of recurrence because the Court would not assume "that [Lyons] would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him . . . ." *Id.* at 105.

By contrast, here, when Plaintiffs filed their Petition and Complaint, they alleged *ongoing* violations of their Eighth and Fourteenth Amendment rights based on the events that were occurring *at the Jail at the time of the Complaint*. That is all that *Lyons* requires. *See Riverside*, 500 U.S. at 51 ("This case is easily distinguished from *Lyons*, in which the constitutionally objectionable practice ceased altogether before the plaintiff filed his complaint."). Yet again, Defendants' argument is

16

hopelessly intertwined with its false premise that "the Sixth Circuit's opinion [held]

that held Plaintiffs' constitutional rights were not violated."   MTD Br. at 17.

Because the Sixth Circuit neither held—nor could hold, in light of the procedural

posture—any such thing, Defendants' *Lyons* argument fails.

> **B.     Defendants' New Evidence Does Not Establish a Change of Factual Circumstances Sufficient to Prove Mootness, and Does Not Withstand Minimal Scrutiny Anyhow.**

Defendants' final mootness argument attempts to minimize the severity of the

COVID-19 pandemic, despite the fact that the pandemic plainly persists, and despite

the fact that it continues to devastate carceral facilities in Michigan.   None of the

"facts" upon which Defendants rely in any way demonstrate that this matter has

become moot.

The "facts" relied upon by Defendants are: that COVID-19 in Michigan has

become slightly less deadly, the state having gone from having the third-most

COVID-related deaths of any state to the ninth-most; that there is not currently a

shortage of hospital beds in southeast Michigan; that the Jail has experienced no

inmate deaths, has only identified two positive COVID-19 cases since May 12, and

has had no hospitalizations or deaths from COVID-19.   Def. MTD Br. at 21–22.

Defendants introduce the "facts" regarding developments at the Jail via a self-

serving affidavit from Vicki Warren, the Jail's health services administrator.   Def.

MTD Br., Ex. A.   This Court has previously called Ms. Warren's credibility into

question in its decision following the preliminary injunction hearing.  *See* ECF No. 93 at 53.

Even assuming all of these untested facts were true (and there is reason to doubt several of them), they would not satisfy Defendants' "heavy burden" of demonstrating that this case has become moot.  Defendants have not demonstrated, nor could they, that the global pandemic no longer presents a threat in the state of Michigan, or that it no longer presents a particularly severe threat to incarcerated people.  *See, e.g.,* Lynn Moore, *More than Half of Inmates at Muskegon Prison Positive for Coronavirus*, mLive (Aug. 25, 2020), https://www.mlive.com/news/muskegon/2020/08/nearly-half-of-inmates-at-muskegon-prison-positive-for-coronavirus.html.  And as of August 26, Oakland County had identified 818 new cases of COVID-19 in the prior seven days alone, well above the statewide per capita rate of infection.[5]  Defendants' cavalier implication that there is nothing to worry about now serves only to underscore that they are continuing to fail to take this pandemic seriously or protect the people whom they incarcerate from its dangers. And again: even if it is true that there are no *current* cases of COVID-19 in the Jail— and that is far from clear—"It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that

---

[5] *See Michigan Coronavirus Map and Case Count*, The New York Times (Aug. 26, 2020), https://www.nytimes.com/interactive/2020/us/michigan-coronavirus-cases.html#county.

nothing yet had happened to them. The Courts of Appeals have plainly recognized that a remedy for unsafe conditions need not await a tragic event." *Helling*, 509 U.S. at 33.  In short, this case plainly has not been mooted by the evolution of the global pandemic—a pandemic that continues to rage in Michigan and its carceral facilities.

Furthermore, even without the benefit of full discovery, Plaintiffs have encountered evidence that undermines Ms. Warren's assertions regarding the number of COVID-19 cases in the Jail and that the Jail is properly quarantining and testing the people it incarcerates.  Ms. Warren avers that there have only been two new COVID-19 cases at the Jail since May 12, one diagnosed on May 18 and one diagnosed on August 13.  Def. MTD Br., Ex. A ¶¶ 6–7.  She also avers that the Jail continues to adhere to the quarantine policies they have previously represented are in place, *id.* ¶ 5, which would include quarantining new arrivals for 14 days.

These representations are undermined by the attached mutually corroborating declarations of one current class member, Mr. Jawad Malik Jones (Exhibit A), and one former class member, Mr. Le Lin (Exhibit B).  Mr. Jones and Mr. Lin both arrived at the Jail around July 9, 2020.  And both were moved from their original cells less than 14 days after their arrival, Ex. A ¶¶ 3–4; Ex. B ¶ 2.  This directly undermines the Jail's representations that it is adhering to its purported two-week quarantine policy for new arrivals.  Worse yet, after approximately three days in Jail, Mr. Lin and Mr. Jones were moved into a cell together, even though Mr. Jones was

visibly suffering from obvious COVID-like symptoms at the time.  Ex. A ¶ 4; Ex. B ¶ 3.  Mr. Lin was so alarmed at Mr. Jones' obvious poor health that he yelled for guards and raised a fuss for hours until Mr. Jones was removed and taken into the medical unit.  Ex. A ¶ 5; Ex. B ¶ 4.  Even at that point, *neither* individual was tested for COVID-19 despite requesting tests.  Ex. A ¶¶ 6–7; Ex. B ¶¶ 6–7.  Mr. Lin was released into the community a few days later, still without having been tested. Ex. B ¶ 7. And Mr. Jones was not tested for approximately two weeks—that is, until *after* his symptoms had passed.  Ex. A ¶ 10. Their declarations suggest that the Jail is not adhering to its supposed quarantine policies and is continuing to recklessly endanger the lives and health of the people it incarcerates and the community at large.  It also illustrates that the Jail is not promptly testing individuals who show symptoms of COVID-19 or who are exposed to those who do.  That, in turn, suggests that rather than adhering to a rational testing policy, the Jail is deliberately *avoiding* administering COVID-19 tests when those tests would tend to identify new cases.

Ultimately, the parties' dueling affidavits regarding testing and quarantine procedures at the Jail are irrelevant to the mootness issues raised in Defendants' 12(b)(1) motion, because the Jail has come nowhere close to demonstrating that the pandemic has passed.  However, these factual disputes do underscore the continuing stakes of this (unquestionably live) controversy, and the continued threat that the

Jail's actions and inaction can pose to the lives and health of incarcerated people and the community at large.

## CONCLUSION

Defendants' motion to dismiss is primarily premised on its inaccurate assertion that the Sixth Circuit's decision vacating the preliminary injunction also permanently dismissed this lawsuit. That argument has no basis either in the rules of civil procedure or in the Sixth Circuit's decision and must be rejected. Defendants' additional arguments for mootness based on subsequent factual developments and the release of some (but not all) named Plaintiffs are equally meritless and contrary to well-established law. The motion to dismiss should be denied.

Respectfully submitted,

/s/ Krithika Santhanam
Krithika Santhanam
Thomas B. Harvey
Advancement Project National Office
1220 L Street, N.W., Suite 850
Washington, DC 20005
(202) 728-9557

/s/ Philip Mayor
Philip Mayor (P81691)
Daniel S. Korobkin (P72842)
ACLU Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6803
pmayor@aclumich.org

/s/ Kevin M. Carlson
Cary S. McGehee (P42318)
Kevin M. Carlson (P67704)
Pitt, McGehee, Palmer,
   Bonanni & Rivers, PC
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
cmcgehee@pittlawpc.com
kcarlson@pittlawpc.com

/s/ Allison L. Kriger
Allison L. Kriger (P76364)
LaRene & Kriger, PLC
645 Griswold, Suite 1717

Detroit, MI 48226
/s/ Alexandria Twinem
Alexandria Twinem
Civil Rights Corps
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
(202) 894-6126

(313) 967-0100
allison.kriger@gmail.com

Attorneys for Plaintiffs/Petitioners

Dated: September 2, 2020

**CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2020 I served this document on all

counsel of record by filing it with the Clerk of the Court using the CM/ECF system.

/s/ Kevin M. Carlson