# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JAMAAL CAMERON; RICHARD
BRIGGS; RAJ LEE; MICHAEL
CAMERON; MATTHEW
SAUNDERS, individually and on
behalf of all others similarly situated,

      Plaintiffs,

      v.

MICHAEL BOUCHARD, in his
official capacity as Sheriff of Oakland
County; CURTIS D. CHILDS, in his
official capacity as Commander of
Corrective Services; OAKLAND
COUNTY, MICHIGAN,

      Defendants.

Case No. 20-cv-10949

Hon. Linda V. Parker

## **PLAINTIFFS' MOTION TO ENFORCE STIPULATED AGREEMENT**

Plaintiffs Jamaal Cameron, Richard Briggs, Raj Lee, Michael Cameron, and Mathew Saunders, on behalf of the class of incarcerated individuals who they represent by and through their counsel hereby move this Court to enforce the Stipulated Agreement ("Stipulation") entered on April 22, 2020, for the reasons set forth herein and in greater detail in the brief attached hereto. In support of their motion, Plaintiffs state as follows:

1.     On April 22, 2020, the parties entered into a Stipulation setting forth measures that Defendants agreed to undertake related to the conditions of confinement at the Oakland County Jail during the pendency of the COVID-19 pandemic. *Id.* The Stipulation expressly provides that this "Court retains jurisdiction to enforce this Agreement *for the duration of this litigation*, and to issue any remedial orders necessary to address a breach of this Agreement." ECF No. 28, PageID.797 ¶ A(2).

2.     During the week of November 16th, Plaintiffs' counsel learned through class members that there had been a severe and widespread COVID-19 outbreak in the Jail and that Defendants were failing to take safety measures necessary to protect class members from exposure to the virus in violation of the Stipulation.

3.     Despite reasonable efforts via phone calls and e-mails with defense attorney Steven Potter, including an email on Thursday, December 3, 2020, explaining the motion and the nature of the request for relief and its legal basis, Plaintiffs requested but did not obtain concurrence in the relief sought.

For the reasons set forth in Plaintiffs' Brief, Plaintiffs respectfully request the Court grant their Motion to Enforce Stipulation and issue an order finding that Defendants have violated the Stipulation and ordering that they immediately comply with its terms and  take the remedial action requested in Plaintiffs' brief.

Respectfully submitted,

/s/ Thomas B. Harvey
Thomas B. Harvey (MBE #61734MO)
Advancement Project National Office
1220 L Street, N.W., Suite 850
Washington, DC 20005
Tel: (202) 728-9557
Ksanthanam@advancementproject.org
Tharvey@advancementproject.org

/s/ Philip Mayor
Philip Mayor (P81691)
Daniel S. Korobkin (P72842)
American Civil Liberties Union
   Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6803
pmayor@aclumich.org
dkorobkin@aclumich.org

/s/  Alexandria Twinem
Alexandria Twinem
   (D.C. Bar No. 1644851)
Civil Rights Corps
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
(202) 894-6126
alexandria@civilrightscorps.org

/s/ Cary S. McGehee
Cary S. McGehee (P42318)
Kevin M. Carlson (P67704)
Pitt, McGehee, Palmer,
   Bonanni & Rivers, PC
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
cmcgehee@pittlawpc.com
kcarlson@pittlawpc.com

/s/ Allison L. Kriger
Allison L. Kriger (P76364)
LaRene & Kriger, PLC
645 Griswold, Suite 1717
Detroit, MI 48226
(313) 967-0100
Allison.kriger@gmail.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JAMAAL CAMERON; RICHARD
BRIGGS; RAJ LEE; MICHAEL
CAMERON; MATTHEW
SAUNDERS, individually and on
behalf of all others similarly situated,

      Plaintiffs,

      v.

MICHAEL BOUCHARD, in his
official capacity as Sheriff of Oakland
County; CURTIS D. CHILDS, in his
official capacity as Commander of
Corrective Services; OAKLAND
COUNTY, MICHIGAN,

      Defendants.

Case No. 20-cv-10949

Hon. Linda V. Parker

## PLAINTIFFS' BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE STIPULATED AGREEMENT

# TABLE OF CONTENTS

Concise Statement of Issues.......................................................................ii

Controlling or Most Appropriate Authority..............................................iii

Index of Exhibits ......................................................................................iv

Statement of Facts ......................................................................................1

Breach of Paragraph 1 and 10 – Soap/hygiene/disinfectant ....................4

Breach of Paragraph 3 and 12 – Masks and Training and Prevention ...................6

Breach of paragraphs 6 and 8 – Testing ..................................................7

Breach of paragraph 7 – Social Distancing .............................................9

Conclusion ...............................................................................................11

## <u>CONCISE STATEMENT OF ISSUES</u>

Whether Defendants Violated the Terms of the April 22, 2020, Stipulated Agreement By Failing to Take Safety Measures Set Forth in The Agreement Necessary to Protect Class Members From Exposure to COVID-19.

     Plaintiffs say: Yes

     Defendants say: No

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

April 22, 2020 Stipulated Agreement ECF No. 28

## <u>INDEX OF EXHIBITS</u>

Exhibit 1 – Declaration of David Kucharski (Supplemental)

Exhibit 2 – Declaration of Mario Cabalka

Exhibit 3 – Declaration of Antonio Fenn

Exhibit 4 – Declaration of Rodney Hicks

Exhibit 5 – Declaration of Dennis Carter

Exhibit 6 – Declaration of Steven Johnson

Exhibit 7 – Notice of Breach

Exhibit 8 – Email Exchange

## STATEMENT OF FACTS

Plaintiffs Jamaal Cameron, Richard Briggs, Raj Lee, Michael Cameron, and Mathew Saunders, on behalf of the class of incarcerated individuals who they represent hereby move this Court to enforce the Stipulated Agreement ("Stipulation") entered on April 22, 2020.  Defendants have acknowledged that the Oakland County Jail is currently experiencing an outbreak of COVID-19 that has infected dozens of class members (at least) as well as members of the Jail staff. Affidavits from class members incarcerated at the Jail demonstrate that the outbreak is due to—or at least has been made far more severe by—Defendants' numerous breaches of the legally binding commitments they made via the Stipulated Agreement between the parties, ECF No. 28, PageID.797–800, to provide safe conditions at the Jail to prevent the spread of this pandemic amongst class members and the community at large.

On April 22, 2020, the parties entered into a Stipulated Agreement setting forth measures that Defendants agreed to undertake related to the conditions of confinement at the Oakland County Jail during the pendency of the COVID-19 pandemic. *Id.*  The Stipulated Agreement expressly provides that this "Court retains jurisdiction to enforce this Agreement *for the duration of this litigation*, and to issue

any remedial orders necessary to address a breach of this Agreement." ECF No. 28, PageID.797 ¶ A(2).[1]

During the week November 16, 2020, Plaintiffs' counsel learned through class members that there had been a severe and widespread COVID-19 outbreak in the Jail and that Defendants were failing to take safety measures necessary to protect class members from exposure to the virus in violation of the Stipulated Agreement. *See* Attached Declarations of David Kucharski (Exhibit 1), Mario Cabalka (Exhibit 2), Antonio Fenn (Exhibit 3), Rodney Hicks (Exhibit 4), Dennis Carter (Exhibit 5), and Steven Johnson (Exhibit 6). The outbreak appears to have originated from two sources: a healthcare (dental) worker, Ex. 3 ¶¶ 4, 6; Ex. 5 ¶ 3, and from Aramark (food service) employees, Ex. 1 ¶ 4; Ex. 3 ¶ 6. An estimated three dozen class members have already been infected,[2] including at least 27 trustees. Ex. 1 ¶ 8. One guard told class member Cabalka that class members are being infected "back-to-back." Ex. 3 ¶5. The outbreak is also serving as a transmission vector to the larger

---

[1] Defendants have asked this Court to vacate the Stipulated Agreement, *see* ECF No. 148, and Plaintiffs have opposed that request, *see* ECF No. 153. This Court has not yet rendered a decision on Defendants' motion, so the Stipulated Agreement remains in effect.

[2] The outbreak was later verified by Defense counsel, who acknowledged to Plaintiffs' counsel that at least 35 inmates had tested positive for COVID-19 in early November and that a Jail dental hygienist and several Jail guards had tested positive for the virus.

community, with at least 11 guards, in addition to the dental and Aramark contractors, becoming infected.   *Id.*

Among other things, Plaintiffs' declarations show that Defendants have been violating the Stipulated Agreement by failing to test exposed and symptomatic class members for COVID-19; by packing class members into crowded cells at or beyond cell capacity, even while the Jail as a whole remains well below its total population capacity; and by failing to reliably provide basic hygiene measures such as cleaning supplies, hand soap, and toilet paper.

Pursuant to the procedures required by the Stipulated Agreement, ECF No. 28, PageID.797 ¶ A(2), on November 23, 2020, Plaintiffs' counsel notified Defense counsel that Defendants had breached paragraphs 1, 3, 6, 7, 8, 10, and 12 of the Stipulated Agreement, which gave Defendants 48 hours to resolve the matter.   *See* Notice of Breach, attached as Exhibit 7.   Thereafter, Plaintiffs' counsel, Cary McGehee, spoke with Defense counsel, Steve Potter, to address the issues in an effort to remediate the breaches of the agreement.   Following this discussion, the parties exchanged emails addressing the matters in dispute. *See* Exhibit 8.[3] The

---

[3] In the correspondence, defense counsel indicates that the Jail has proposed to Oakland courts that 41 class members be released or placed on tether.  While this effort might incrementally reduce overcrowding in the Jail if the courts accede, it is not a substitute for the Jail fulfilling the obligations of the Stipulated Agreement, which are designed to keep all people incarcerated in the Jail, and the community at large, as safe as possible in the midst of this pandemic.

parties have now exhausted their efforts to resolve how the Stipulated Agreement has been breached and what actions should be taken to remediate the breaches, and Defendants have refused to take several common-sense measures suggested by Plaintiffs. Pursuant to the Stipulated Agreement, Plaintiffs' counsel has also contacted the Court and notified it of the breaches of the Stipulated Agreement and requested a conference call with the parties and the Court to discuss the matter.

The specific breaches of the Agreement are substantiated by the Declarations attached hereto as Exhibits 1–6. The breaches include paragraphs 1, 3, 6, 7, 8, 10, and 12 of the Agreement. The bases for these allegations, along with proposed remedies, follow:

**Breach of Paragraph 1 and 10 – Soap/hygiene/disinfectant:** Paragraphs 1 and 10 of the Stipulated Agreement require Defendants to provide a supply of soap, hand towels, and disinfectant cleaning supplies adequate to clean cells and common surfaces to all class members. ECF No. 28, PageID.798, 800 ¶¶ B(1), B(10).

The attached declarations from class members demonstrate that Defendants are flagrantly breaching this commitment. The showers in the trustee dorm where David Kucharski is housed were cleaned only twice a week, even while a COVID outbreak was known to exist within the dorm. Ex. 1 ¶ 5. Numerous class members report having to beg guards for soap, and they often go days without receiving any despite repeated requests. Ex. 2 ¶ 10; Ex. 4 ¶ 6; Ex. 5 ¶ 7. And while class members

4

may have access to DMQ, they do not have access to the washcloths and rags as would be necessary to allow them to clean and disinfect their cells, and they have no way to clean common surfaces such as showers or phones, requiring them to resort to measure such as putting their socks over the phone to make calls.  Ex. 1 ¶ 5; Ex. 2 ¶¶ 5, 8; Ex. 5 ¶ 2; Ex. 6 ¶ 2.  In fact, the Jail took over a month to fix a flooding toilet that resulted in raw sewage flowing down the hallway whenever another inmate (who tested positive for COVID-19) would flush his toilet, with no way for class members to clean or avoid this foul health hazard.  Ex. 5 ¶ 6.  And due to guards' failure to empty the trash, the trash cans in some cells are overflowing onto the ground, spreading food and other waste all over the floors—the same floors where class members are required to sleep due to the overcrowding of the cells, as detailed below.  Ex. 4 ¶ 5.  Cabalka and his cellmates were moved into a filthy cell that no one even tried to clean prior to their moving in, and upon their arrival there was excrement in the toilet and gunk and dirt all over the common surfaces.  Ex. 2 ¶ 8.  Even trustees who are assigned to clean others' cells and serve their food are not being provided with gloves, hairnets, or clean masks.  Ex. 2 ¶ 4.

**Remedial Action Requested:** Plaintiffs request that Defendants be required to abide by the Stipulated Agreement.  Rags and washcloths must be distributed as

needed along with DMQ three times a day.  Soap and toilet paper[4] must be ordered

to be provided *promptly* upon request.  Any assurances by Defendants that such

items are already being made available in adequate quantities are simply not credible

in light of the evidence to the contrary.

### Breach of Paragraph 3 and 12 - Masks and Training and Prevention:

Paragraph 3 of the Stipulated Agreement requires that "to the fullest extent possible,

all Jail staff wear personal protective equipment, including masks."  ECF No. 28,

PageID.799 ¶ B(3).  Yet numerous class members report that mask wearing by

guards is sporadic at best and that the practice amongst the nurses is even more lax.

Ex. 2 ¶ 7 ("About a third of the deputies in here never wear masks.") While

Defendants have responded to this breach by stating that they are sending reminder

emails to the staff encouraging them to wear masks, these reminders are evidently

not effective. Mask wearing, of course, has been verified by the Center for Disease

Control (CDC) as critical to protecting the wearer and others from contracting the

virus.

---

[4] Although toilet paper may not be expressly mentioned in the Stipulated Agreement,
Class members are reporting that it is not being provided for days at a time.  Ex. 2 ¶
10; Ex. 4 ¶ 5.  In addition to being an obvious need for basic hygiene purposes, toilet
paper is useful as a cleaning supply, and must be provided as a remedy for
Defendants' breaches of the Stipulated Agreement, particularly given their failure to
provide other cleaning supplies such as rags and washcloths.

**Remedial Action Requested:** Nurses must be given reminders of their obligation to wear masks. Defendants must be ordered to actively monitor compliance with mask-wearing requirements by nurses, guards, and other staff members. Those who do not wear masks should be immediately reprimanded/disciplined as a deterrent to failing to abide by this important safety rule and term of the Stipulated Agreement.[5]   In addition, Defendants should be required to hold a staff meeting with each shift to emphasize the vital role of masks in preventing the further proliferation of this outbreak-both for staff and class members' well-being.

**Breach of paragraphs 6 and 8 – Testing**:   Paragraph 6 of the Stipulated Agreement requires immediate testing of anyone displaying known symptoms of COVID-19.   ECF No. 28, PageID.799 ¶B(6).   Paragraph 8 requires adequate treatment and quarantining of class members who have tested positive *or* been exposed to COVID-19.  ECF No. 28, PageID.799 ¶B(8).

Contrary to the Stipulated Agreement, the Jail is not consistently administering COVID-19 tests to class members who display symptoms of COVID-19 or who are exposed to other class members who have tested positive.   For example, David Kucharski, who was housed in the trustee dorm where a known

---

[5] It should not be hard to identify staff who do not wear masks given the pervasive use of surveillance cameras in the Jail.

outbreak was in progress, was not tested for six days despite displaying numerous symptoms; nurses refused to test him because he did not have a fever (at the time) and instead told him "I'm sure it's just the flu." Ex. 1 ¶¶ 6–8. (Mr. Kucharski has subsequently informed Plaintiffs' counsel that he eventually was tested—and tested positive.)  In addition,  and in violation of Paragraph 8's requirement to provide adequate care to those exposed to COVID-19, the Jail apparently is avoiding testing class members who are housed in the same cell (or an adjoining cell) where a positive COVID case is identified.  Ex. 2 ¶ 6; Ex. 3 ¶ 7.

**Remedial Action Requested:** Based on the severity of the current COVID-19 outbreak in the Jail, which has clearly been exacerbated by Defendants' breaches of the Stipulated Agreement, <u>immediate testing of the entire Jail population is a necessary remedy</u> for Defendants' breach of paragraphs 6 and 8 (and the other breaches identified herein) in order to identify the scope of the outbreak and quarantine sick class members before the outbreak spreads further.  *See* ECF No. 28, Page ID.797 (providing that this Court has authority "to issue any remedial orders necessary to address a breach of this [Stipulated] Agreement").  Without immediate and comprehensive testing, this outbreak cannot be contained.  At a minimum, the Jail should be required to implement a testing regime of anyone who is in a cell (or an adjoining cell) when a positive COVID case is identified.

8

Furthermore, comprehensive testing is required as an emergency discovery measure to determine the severity of the outbreak that has resulted from Defendants' actions and inaction and breaches of the Stipulated Agreement. This information is ephemeral and must be obtained now to be preserved for the record.

**Breach of paragraph 7 – Social Distancing:** Paragraph 7 of the Stipulated Agreement requires Defendants to "[p]rovide adequate spacing between people incarcerated, to the maximum extent possible with a goal of six feet of separation, so that social distancing can be accomplished." ECF No. 28, PageID.799 ¶ B(7).

Defendants are in obvious breach of this requirement, as the evidence shows that class members have been packed into crowded multi-person cells at or beyond the population limit for each cell, instead of being dispersed, despite the fact that the Jail is currently well below its maximum capacity and there is therefore ample space in which to effectuate social distancing measures.

Defense counsel informed Plaintiffs' counsel that there are approximately 741 people incarcerated in the Jail, less than half of the Jail's total capacity of 1,664 inmates. *See* ECF No. 93, PageID.2993. With a population of 741, the jail should be able to attain a higher degree of social distancing by spacing inmates out more amongst cells rather than by packing cells (including the IR cells and 10-man cells) to and beyond their capacity.

Yet class members report distressing levels of overcrowding in their cells. Kucharski, who was a trustee living in the dorm where the outbreak initiated, reports being locked in over-capacity 31-bunk dorm with *37* total class members, with about 12 inches of separation between bunks.  At the time of his affidavit, Hicks reports being in six-man cell with 10 total class members; two extra bunks have been added, and two class members are literally sleeping on the floor.  Ex. 4 ¶ 2.  Similarly, Neff was housed in a ten-man cell that contained 9 people, with two people having to sleep on the floor.  Ex. 3 ¶ 3.  Cabalka was housed a 4-man cell that is packed with eight inmates.[6]  Ex. 2 ¶ 9.

**Remedial Action Requested:**  Defendants should take immediate steps to alleviate the overcrowding of cells by spreading class members out to the maximum degree feasible.  Defendants should also be required to provide Plaintiffs and this Court with an update to their Exhibit C admitted during the Preliminary Hearing, ECF No. 68, detailing the current population level and maximum occupancy of each cell.  This is necessary both as a remedial measure to verify the current housing arrangements and as an emergency discovery measure given that Defendants do not document the housing arrangements in place at all points in time, and thus this

---

[6] Plaintiffs' counsel has been informed that Cabalka subsequently tested positive for COVID-19 and was moved elsewhere and have not been able to communicate with him since.

10

information will not be possible to reconstruct at a later date.[7]  Plaintiffs note that without access to a list of population by cell such as the one requested here, it is impossible to assess any claims Defendants might make regarding the advisability or feasibility of moving class members between certain areas or cells.

## CONCLUSION

The attached affidavits demonstrate that Defendants have been systematically violating numerous provisions of the Stipulated Agreement—breaches that are all the more alarming given Defendants' repeated representations throughout this litigation that the Stipulated Agreement reflects measures they have supposedly been taking all along.  The result of Defendants' breaches is a second virulent outbreak of COVID-19 in the Oakland County Jail, an outbreak that is currently tearing through the facility, infecting both staff and inmates "back-to-back"—in the words of one guard.  Ex. 3 ¶ 5.  Addressing this outbreak requires immediate remedial action as outlined above, including immediate testing of the entire Jail population and the measures described above to alleviate overcrowding and improve hygiene.

Respectfully submitted,

/s/ Thomas B. Harvey
Thomas B. Harvey (MBE #61734MO)
Advancement Project National Office
1220 L Street, N.W., Suite 850
Washington, DC 20005

/s/ Cary S. McGehee
Cary S. McGehee (P42318)
Kevin M. Carlson (P67704)
Pitt, McGehee, Palmer,
   Bonanni & Rivers, PC

---

[7] Plaintiffs' counsel requested this updated document during recent remediation discussions, but Defendants refused to provide it.

Tel: (202) 728-9557
Tharvey@advancementproject.org

/s/ Philip Mayor
Philip Mayor (P81691)
Daniel S. Korobkin (P72842)
American Civil Liberties Union
   Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6803
pmayor@aclumich.org
dkorobkin@aclumich.org

/s/  Alexandria Twinem
Alexandria Twinem
(D.C. Bar No. 1644851)
Civil Rights Corps
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
(202) 894-6126
alexandria@civilrightscorps.org

117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
cmcgehee@pittlawpc.com
kcarlson@pittlawpc.com

/s/ Allison L. Kriger
Allison L. Kriger (P76364)
LaRene & Kriger, PLC
645 Griswold, Suite 1717
Detroit, MI 48226
(313) 967-0100
Allison.kriger@gmail.com

Attorneys for Plaintiffs/Petitioners


Dated: December 3, 2020

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing instrument was filed with the U.S. District Court through the ECF filing system and that all parties to the above cause was served via the ECF filing system on December 3, 2020.

Signature: <u>/s/ Carrie Bechill</u>
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
<u>cbechill@pittlawpc.com</u>

13