# EXHIBIT S

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DISTRICT

JAMAAL CAMERON; RICHARD
BRIGGS; RAJ LEE; MICHAEL
CAMERON; MATTHEW
SAUNDERS, individually and on
behalf of all others similarly situated,

    Plaintiffs,

Case 2:20-cv-10949-LVP-MJH

v.

MICHAEL BOUCHARD, in his
official capacity as Sheriff of Oakland
County and OAKLAND COUNTY, MICHIGAN,

    Defendants.

## AFFIDAVIT OF MAJOR CURTIS CHILDS

Major Curtis Childs, being first duly sworn, deposes and states:

1. That this Affidavit is made of my own personal knowledge and that if I am sworn to testify, I can give competent testimony of my own personal knowledge in support of each paragraph of this Affidavit regarding conditions at the main jail.

2. That I have been employed by the Oakland County Sheriff's Office ("OCSO") since January 22, 1992. At all times relevant to the instant action I have worked as a Captain and currently, Major, at the Oakland County Jail ("OCJ"). I have overall responsibility for the jail.

1

3. OCSO is continuing to exercise social distancing within all areas of both Corrective Services Divisions to the fullest extent possible and where practicable and as we have done since the beginning of the Covid pandemic. We continue to house by our validated, objective and court tested Northpointe classification system which has helped us keep incidents in the housing areas of our facilities at a minimum.

4. Housing in the Annex has remained as it always was with 2 inmates per cell. We continue to limit the number of people allowed out of their cells and into the dayroom at one time for social distancing purposes. We continue utilizing the certain pods within the Annex for new arrest quarantine.

5. In the main jail, we have 36 cells on the second floor of the main jail that are MDOC approved to house 10 people.

6. Each 10 person cell is approximately 19' x 19' which is approximately 361 sq. feet.

7. As of today, the cells on the second floor of the main jail are showing the following housing information:

    a. One (1) 10-person cell that is housing 10 people
    b. Two (2) 10-person cells that are housing 9 people
    c. Five (5) 10-person cells that are housing 8 people
    d. Twelve (12) 10-person cells that are housing 7 people
    e. Eleven (11) 10-person cells that are housing 6 people
    f. Two (2) 10-person cells that are housing 5 people
    g. Two (2) 10-person cells that are housing 4 people
    h. One (1) 10-person cell that is housing 3 people

8. Thirteen (13) of the second floor cells are currently housing maximum security inmates. Another thirteen (13) cells are housing high medium security levels.

9. The main jail housing and movements are also restricted based on whether or not we have any area(s) under quarantine. The one current cell that has ten people in it just recently came off of quarantine and will be reduced when practicable and inmate movements fit within our classification system. Our housing areas and capacities have been approved by MDOC and we have always passed our annual inspections.

10. Many of our first floor cells also have quite a bit of space as well.

11. Receiving for example has a total capacity of 106. We have three (3) people in there as of today.

12. Our kitchen inmate worker dorm (N dorm) houses a total of 60 people and we have 36 people currently assigned to that area. The other inmate worker dorm (trusty dorm) has six cells and each one allows for twelve (12) people. Two (2) of those **cells are empty** and the others contain no more than three (3) people.

13. I block, which is also rated for five (5) 10-person cells and one (1) 8-person cell, has no more than six (6) people in each cell with the 8-person cell only having four (4) people assigned.

3

14. The East Annex is still housing inmates in various bunks in a checkerboard type pattern within both dorms of the facility. That facility is rated for 398 inmates and we are currently housing 55. There are 44 on one side and 11 on the other. The inmates assigned to that facility are also housed there based on their classification level as well as a review by medical. People with certain medical issues may not be housed there if it is determined that they need to be closer to the clinic.

15. **Our deputies and supervisors that are assigned to the classification unit fully understand what we are trying to accomplish by maintaining the safety and security of the facility and balancing that with the need to socially distance as much as practicable. The numbers in all of our housing areas clearly show that as being accomplished as directed.** I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Further, Affiant sayeth not.

Dated: December 10, 2020  /s/Major Curtis Childs
MAJOR CURTIS CHILDS
*consent for signing given telephonically

Due to the COVID-19 crisis, it was not possible to obtain a written signature on the above Affidavit. I am an attorney admitted to the Eastern District of Michigan. On December 10, 2020, I personally spoke with Major Curtis Childs and read this Affidavit to him. Major Childs told me that the information in the above Affidavit is true and gave me verbal consent to sign on his behalf.

> I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

/s/Steven M. Potter (P33344)
Steven M. Potter (P33344)
Attorney for Defendants
