UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMAAL CAMERON, RICHARD BRIGGS,
RAJ LEE, MICHAEL CAMERON, and
MATTHEW SAUNDERS, individually and
on behalf of all others similarly situated,

        Plaintiffs,                   Civil Case No. 20-10949
                                           Honorable Linda V. Parker

v.

MICHAEL BOUCHARD, CURTIS D. CHILDS,
and OAKLAND COUNTY,

        Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO VACATE (ECF NO. 148) AND DISMISS (ECF NO. 149)**

Plaintiffs filed this lawsuit at the start of the COVID-19 pandemic seeking release from the Oakland County Jail of inmates who are at increased risk of serious outcomes if they contract the virus and certain safety protocols to protect all jail inmates from the virus. Early in the proceedings—while the Court was adjudicating Plaintiffs' motions for temporary and permanent injunctive relief— the parties entered into two stipulated orders: (i) an April 22, 2020 order in which Defendants agreed to undertake outlined measures at the jail "during the pendency of the COVID-19 pandemic" (ECF No. 28 at Pg ID 798); and (ii) a May 29, 2020 order prohibiting Defendants, with limited exceptions, from transferring inmates

for disciplinary reasons into a quarantined area of the jail, "during the pendency of the instant litigation" (ECF No. 110 at Pg ID 3153). The matter is presently before the Court on Defendants' motion to vacate those stipulated orders (ECF No. 148), as well as Defendants' related motion to dismiss this action (ECF No. 149). Both motions have been fully briefed. (ECF Nos. 153, 154, 157, 159.) The Court held a hearing with respect to the motions on December 14, 2020.

Defendants' motions are premised primarily on the Sixth Circuit Court of Appeal's decision, *Cameron v. Bouchard*, 815 F. App'x 978 (6th Cir. 2020), vacating this Court's opinion and order granting Plaintiffs' motion for a preliminary injunction (ECF Nos. 93, 94). Contrary to this Court's factual findings following an evidentiary hearing, the Sixth Circuit determined that Defendants had taken reasonable steps to prevent the spread of COVID-19 at the jail. *Cameron*, 815 F. App'x at 985. The Sixth Circuit therefore concluded that Plaintiffs were not likely to succeed on their claims in this matter. The appellate court went on to state that this conclusion "is dispositive, because '[its] cases warn that a court must not issue a preliminary injunction where the movant presents no likelihood of merits success." *Id*. at 988 (quoting *Wilson v. Williams*, 961 F.3d 829, 843-45 (6th Cir. 2020)).

## Defendants' Arguments

According to Defendants, the Sixth Circuit's decision ends this litigation and requires the Court to vacate the parties' stipulated orders and dismiss Plaintiffs' claims. With regard to the latter, Defendants maintain that Plaintiffs' claims for injunctive relief have been completely adjudicated and dismissed as a result of the decision on appeal. Defendants also maintain that manifest injustice—that being, direct contradiction of the Sixth Circuit's decision—will result in the continued enforcement of the parties' stipulated orders. In their motion to dismiss, Defendants further argue that events subsequent to the Court's preliminary injunction decision deprive the Court of subject matter jurisdiction to adjudicate Plaintiffs' claims. (ECF No. 149.)

Specifically, Defendants argue that the claims for declaratory relief of current jail inmates, as defined by the Class and Sub-Class certified by the Court on May 21, 2020 (*see* ECF No. 93 at Pg ID 3023-32), are moot because the Sixth Circuit has concluded that the constitutional rights of jail inmates were not violated. In other words, the Sixth Circuit's finding, Defendants maintain, is conclusive of whether Plaintiffs have suffered an injury in fact and they can do nothing more than show "a conjectural threat of future harm that their constitutional rights will be violated." (ECF No. 149 at Pg ID 3720.)

Defendants also argue that the release of Class members, including all of the named Plaintiffs, renders this action moot. As to future detainees, Defendants contend that they lack standing because "class representatives without personal standing cannot predicate standing on injuries suffered by members of the class but which they themselves have not or will not suffer." (*Id.* at 3723.) Anticipating that Plaintiffs will argue that Class representatives had standing when this Court certified the Class and Sub-Class, Defendants rely again on the Sixth Circuit's decision to argue that, in fact, the Class Representatives did not because they were found by the Sixth Circuit to have not suffered an injury in fact.

Lastly, Defendants maintain that facts and circumstances on which Plaintiffs' Complaint was premised have changed in that the number of COVID-19 cases in Michigan, as of August 19, 2020 when Defendants filed their motion, had significantly decreased and "[t]he imminent devastation and outbreak that was supposed to occur in [the Oakland County Jail] as alleged in Plaintiffs' Complaint did not happen." (*Id*. at Pg ID 3726.)

## Discussion

Contrary to Defendants' assertion, the Sixth Circuit's July 9 decision does not sound the death knell for Plaintiffs' claims. The appellate court's use of "dispositive" referred only to whether Plaintiffs were entitled to a *preliminary* injunction. In other words, the court reasoned only that its finding that Plaintiffs

4

were not *likely* to succeed on the merits was the dispositive factor *in deciding whether to grant preliminary injunctive relief.* Defendants' "reasoning fails . . . because it improperly equates 'likelihood of success' with 'success,' and what is more important, because it ignores the significant procedural differences between preliminary and permanent injunctions." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 394. As the Supreme Court explained in *Camenisch*:

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. … and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits. In light of these considerations, it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits.

*Id.* at 395 (internal citations omitted); *see also Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Camenisch*). Generally, a final merits determination is not made at the preliminary injunction stage because the parties have not presented their "full proof of the facts." *Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.*, 753 F.2d 1354, 1356 (6th Cir. 1985) ("An appellate court in reviewing the propriety of a preliminary injunction should refrain from the unnecessary comment on the

5

evidence or review of the merits of the case since the case has yet to be heard in full on the merits."); *see also Cameron*, 815 F. App'x at 986 (quoting *Wilson*, 961 F.3d at 832-33) ("Our task is to review the record that was before the district court at the time the preliminary injunction was entered." (ellipses omitted)).

Contrary to Defendants' assertion—repeated at the motion hearing—the Sixth Circuit also did not make a final adjudication with respect to Plaintiffs' habeas claim. The appellate court declined to address Defendants' threshold arguments relative to the claim based on its *preliminary* assessment of the facts and whether Plaintiffs demonstrated a constitutional violation based on those *preliminary* factual determinations. *See id.* at 983 n.1. Notably, the Sixth Circuit did opine on whether Plaintiffs presented a cognizable habeas claim, stating that "[t]his … argument [that Plaintiffs have not presented a cognizable claim] is inconsistent with [its] decision in *Wilson*." *Id.* (citing *Wilson*, 961 F.3d at 837-39).

Because Defendants overstate the impact of the Sixth Circuit's decision, they mistake any manifest injustice flowing from a failure to vacate the April 22 and May 29 stipulated orders. Defendants fail to identify any other injustice if the orders remain in effect. *See Fairway Constr. Co. v. Allstate Modernization, Inc.*, 495 F.2d 1077, 1079 (6th Cir. 1974) ("The general rule is that stipulations entered into freely and fairly are not to be set aside except to avoid manifest injustice."); *United States v. Robinson*, 191 F. App'x 408, 409-10 (6th Cir. 2006) (same). In

6

reply Defendants argue that continued enforcement of the stipulations will "subject[ them] to the daily demands of Plaintiffs, and Defendants will be forced to relinquish control of the Oakland County Jail … to Plaintiffs' counsel who have no experience in running a jail." (ECF No. 154 at Pg ID 3781.) However, Defendants' alarm seems contradictory to their repeated refrain that they already were doing everything the orders require before this lawsuit was filed; a claim expressly included in one of the stipulations. (*See* ECF No. 28 ¶ A(3) ("Defendants' position is that Defendants were in full compliance with all subparagraphs of this Stipulation prior to the filing of Plaintiffs' lawsuit.")  If that is so, and continues to be the case, Plaintiffs' counsel will have no reason to complain or seek interference in jail operations.

Each of the stipulated orders contains express and plain language providing that the order will remain in force throughout the duration of this litigation and/or the COVID-19 pandemic. (ECF No. 28 at Pg ID 797 ¶ A(2) ("The Court retains jurisdiction to enforce this Agreement for the duration of this litigation"); *id.* ¶ B ("Defendants shall undertake the following measures related to the conditions of confinement at the Oakland County Jail during the pendency of the COVID-19 pandemic"); ECF No. 110 at 3152, 2153-54 ¶¶ 3, 7. ("This stipulated order will remain in effect only during the pendency of the instant litigation.").) Nothing in

the parties' agreement conditioned Defendants' obligations on the rise or fall of the Court's preliminary decisions.

Lastly, Plaintiffs' claims are not moot. "'Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies.'" *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 595 (6th Cir. 2014) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). A case may become moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396, 410 (1980) (internal quotation marks and citation omitted). This latter "personal stake requirement" is a corollary to the rule that federal courts lack the power to "decide questions that cannot affect the rights of the litigants in the case before them." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). The plaintiff must have a stake in the action from its filing through its termination. *See Hrivnak v. NCO Portfolio Mgmt., Inc.*, 719 F.3d 564, 567 (6th Cir. 2013). If developments during the course of litigation eliminate the plaintiff's personal stake, the case generally must be dismissed as moot. *Id*. (citing *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)).

"When class actions are involved, however, the Supreme Court has explained that 'the Art[icle] III mootness doctrine' is 'flexible.'" *Wilson v. Gordon*, 822 F.3d 934, 942 (6th Cir. 2016) (quoting *Geraghty*, 445 U.S. at 400).

8

"Once a class is certified, the mooting of the named plaintiff's claim does not moot the action." *Brunet v. City of Columbus*, 1 F.3d 390, 399 (6th Cir. 1993). "This is because once a class is certified, 'the class of unnamed persons described in the certification acquires a legal status separate from the interest asserted' by the named plaintiff." *Wilson*, 822 F.3d at 942 (quoting *Sosna v. Iowa*, 419 U.S. 393, 399 (1975)). As such, it matters not that the Class representatives are now released from the Oakland County Jail.

Moreover, in *Brunet*, the Sixth Circuit recognized that "special mootness rules exist for class actions." 1 F.3d at 399. Particularly relevant to the current matter is the "inherently transitory" exception. This exception developed from the Supreme Court's decision in *Sosna*, where the Court observed:

> There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such circumstances, whether the certification can be said to "relate back" to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise would evade review.

419 U.S. at 402 n.11.

The Supreme Court invoked this exception in *Gerstein v. Pugh*, 420 U.S. 103 (1975). The named plaintiffs in *Gerstein* filed a lawsuit on behalf of a putative class of pretrial detainees, alleging that Florida violated their constitutional rights by not providing a prompt probable cause hearing. *Id*. at 105-07. The record

9

before the Supreme Court did not clearly show whether any of the named plaintiffs were still pretrial detainees when the district court certified the class. *Id*. at 110 n.11. Nevertheless, the Court held that the case was not moot, explaining:

> The length of pretrial custody cannot be ascertained at the outset, and it may be ended at any time by release on recognizance, dismissal of the charges, or a guilty plea, as well as by acquittal or conviction after trial. It is by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class. Moreover, in this case the constant existence of a class of persons suffering the deprivation is certain."

*Id*. From *Gerstein*, courts have distilled two requirements for the "inherently transitory" exception to apply: "(1) that the injury be so transitory that it would likely evade review by becoming moot before the district court can rule on class certification, and (2) that it is certain other class members are suffering the injury." *Wilson*, 822 F.3d at 945.

At to the first requirement, like *Gerstein*, the present action involves pretrial detainees or convicted individuals serving sentences of less than a year. The "inherently transitory" exception is particularly applicable to "an individual incarcerated in a county jail [who] may be released for a number of reasons that he cannot anticipate." *Olson v. Brown*, 594 F.3d 577, 583 (7th Cir. 2020); *Wilson v. Gordon*, 822 F.3d 934, 946 (6th Cir. 2016) (quoting *Olson* to explain "that the crux of the 'inherently transitory' exception is the uncertainty about the length or time a

claim will remain alive.'") (additional citation omitted). As the *Olson* court "emphasized," and the Sixth Circuit restated in *Wilson*, an inmate in a county jail "'do[es] not know when his claim w[ill] become moot' because 'the duration of his claim [i]s at the discretion of the … Department of Correction.'" *Wilson*, 822 F.3d at 946 (quoting *Olson*, 594 F.3d at 583).

The second requirement is satisfied because the COVID-19 pandemic continues, as does the detention of individuals in the Oakland County Jail. While the number of infected individuals in Oakland County and Michigan may have been in decline when Defendants filed their motion to dismiss, those numbers are now well-above what they were when Plaintiffs filed this lawsuit. *See* https://www.michigan.gov/coronavirus/0,9753,7-406-98163_98173---,00.html (visited 12/9/20); (*Compare* ECF No. 93 at Pg ID 2996 (as of May 19, 2020, COVID-19 cases in Michigan were 52,350 with 5,017 deaths) *with* https://www.michigan.gov/coronavirus (visited 12/9/20) (total confirmed cases currently at 410,295 with 10,138 confirmed COVID-19 related deaths). Due to an "alarmingly high" rate of infections and death from the virus, the State recently issued and extended orders restricting activities. *See, e.g.,* https://www.michigan.gov/coronavirus/0,9753,7-406-98158-546811--,00.html (visited 12/9/20). As "COVID-19 is more easily transmitted within communal living and densely packed environments, such as jail facilities" (ECF No. 93 at Pg

11

ID 3000 (citing Meyer Decl., ECF No. 1-3 at Pg ID 95; Lauring Decl., ECF No. 1015 at Pg ID 270-72)), Plaintiffs continue to have a claim that they are at risk of serious injury.

Defendants assert that—at least as of August 19, 2020—no inmate had been hospitalized or died from COVID-19. (ECF No. 149 at Pg ID 3726 (citing Ex. A ¶ 3, ECF No. 149 at Pg ID 3731).) While this assertion may prove accurate, in litigation, each party is usually afforded the opportunity to engage in discovery to assess the accuracy of the opposing party's assertions. Whether Defendants are taking reasonable actions to protect Plaintiffs from this potentially life-threatening virus is a determination that has not been finally determined and Plaintiffs do not have to show that inmates already have been harmed to demonstrate their entitlement to relief. *See Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them.").

Thus, this action is not moot, and a representative remains to pursue relief on behalf of the Class and Sub-Class. But even if the claims of the named representatives have become moot, the answer is not to dismiss the action. *See Wilson*, 822 F.3d at 942 (quoting *Brunet*, 1 F.3d at 399) ("The general rule is that "*[o]nce a class is certified*, the mooting of the named plaintiff's claim does not

moot the action, the court continues to have jurisdiction to hear the merits of the action if a controversy between any class member and the defendant exists.") (emphasis in original and brackets omitted). This is because a representative may still adequately represent the interests of the class even if his or her personal claims become moot. *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 619 (6th Cir. 2013) (citing *Sosna v. Iowa*, 419 U.S. 393, 401-03 (1975)) ("While *Sosna* is first and foremost an Article III determination, we can distill from its reasoning that a named class representative may still adequately represent the class, for purposes of Rule 23, even if the representative's personal claims have become moot, at least until such time that there is a determination that the representative is no longer adequate."). Alternatively, Plaintiffs may identify members of the Class and Sub-Class who can substitute in as an adequate representative. *See, Gerahgty*, 445 U.S. 388, 394 (1980).

## IV. Conclusion

In short, the Court finds that neither the Sixth Circuit's preliminary assessment regarding the merits of Plaintiffs' claims, the release of some members of the Class and Sub-Class, nor Defendants' factual assertions require this Court to vacate the stipulated orders previously entered in this case or the dismissal of Plaintiffs' claims.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Vacate Stay (ECF No. 148) and Motion to Dismiss (ECF No. 149) are **DENIED**.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: December 15, 2020