UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMAAL CAMERON, RICHARD BRIGGS,
RAJ LEE, MICHAEL CAMERON, and
MATTHEW SAUNDERS, individually and
on behalf of all others similarly situated,

        Plaintiffs,                      Civil Case No. 20-10949
                                              Honorable Linda V. Parker

v.

MICHAEL BOUCHARD, CURTIS D. CHILDS,
and OAKLAND COUNTY,

        Defendants.
_____/

## OPINION AND ORDER OVERRULING OBJECTIONS AND GRANTING FINAL APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT

Plaintiffs filed this lawsuit at the start of the COVID-19 pandemic, seeking release of Oakland County Jail inmates who are at increased risk of serious outcomes if they contract the virus and certain safety protocols to protect all jail inmates from the virus. The Court subsequently certified the matter as a class action and the parties, more recently, reached a settlement of the Class members' claims ("Class Settlement"). On May 27, 2021, this Court preliminarily approved the Class Settlement, directed notice of the settlement to the Class, and scheduled a fairness hearing for July 7, 2021. (ECF No. 184.)

**Legal Standard for Final Approval of Settlement**

Rule 23(e) of the Federal Rules of Civil Procedure sets forth the procedures for the settlement of class actions. Pursuant to the rule, the court's role is to determine whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, the court considers " 'whether the interests of the class as a whole are better served if the litigation is settled rather than pursued.' " *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (quoting *Manual for Complex Litigation (Third)*, § 30.42 at 238 (1995)). As one judge in this District has observed:

> "In assessing the settlement, the Court must determine 'whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation.' " *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) (quoting *Fisher Bros. v. Cambridge-Lee Indus.*, 630 F. Supp. 482, 489 (E.D. Pa. 1985)). An appropriate range of reasonableness "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). Under this standard, "[a] just result is often no more than an arbitrary point between competing notions of reasonableness." *In re Corrugated Container Antitrust Litig. (II)*, 659 F.2d 1322, 1325 (5th Cir. 1981).

*Int'l Union v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *21 (E.D. Mich. July 13, 2006), aff'd sub nom. *UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007).

Courts in the Sixth Circuit consider seven factors when deciding whether a class action settlement is fair, adequate, and reasonable:

> "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest."

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009) (quoting *UAW v. Gen. Motors Corp.*, 497 F.3d at 631). "The district court enjoys wide discretion in assessing the weight and applicability of these factors." *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992); *see also Ford Motor Co.*, 2006 WL 891151, at *14 ("The court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case.").

## Analysis

For the reasons articulated by Class Counsel at the July 7 hearing, the Court finds the Class Settlement fair, adequate, and reasonable when the eight factors identified above are considered. As will be discussed in more detail below, only three Class members raised "objections" to the agreement and many of their

3

complaints did not address issues relevant to whether the settlement should be approved. The Class Settlement accomplishes most, if not more, of what Plaintiffs sought in this action aside from the release of medically-vulnerable inmates—a goal the Sixth Circuit's decision in this case reflects Class Counsel was not likely to achieve. While the Court had two concerns related to the October 31, 2021 termination of its jurisdiction to enforce the Class Settlement, counsel's responses to those concerns at the hearing assured the Court that the deadline was crucial to Class Counsel achieving other significant concessions in the Class Settlement.

The Court received written "objections" to the Class Settlement from two Oakland County Jail inmates: Keith James Koerber, II (ECF Nos. 186, 189) and Megail Aaron, II (ECF No. 188). Class Counsel also informed the Court that a third inmate, Timothy Austin, contacted them, not to object to the Class Settlement but to inform them of Defendants' breach of the agreement. All three inmates were heard at the July 7 fairness hearing.

Mr. Aaron's concerns relate to: (a) Class Counsel's failure to accomplish the release of inmates; (b) his belief that Defendants will not comply with the agreement; and (c) the potential termination of the Court's jurisdiction before the end of the pandemic. As noted above, Plaintiffs were not likely to secure the release of inmates in this matter. It would not have been in the best interests of the Class for Class Counsel to pursue this unlikely relief and jeopardize the benefits

they could secure. The settlement provides a mechanism to monitor and address any breach of its terms. Therefore, Mr. Aaron's fear that Defendants will not abide by the agreement is not grounds for rejecting it. The Court already addressed his final issue.

Mr. Koerber voiced four complaints related to this matter at the hearing: (a) allowing Defendants to administer the Johnson & Johnson vaccine to inmates as opposed to the vaccine produced by Pfizer or Moderna; (b) Defendants' practice of housing vaccinated and unvaccinated individuals together; (c) Defendants' failure to provide N-95 masks to inmates; and (d) the exclusion of hypertension as a condition qualifying a Jail inmate from inclusion in the subclass of medically vulnerable individuals.[1] As explained by Class Counsel at the hearing, there were sound reasons for not pressing Defendants to accept these terms as part of the Class Settlement.

For one, a one-shot vaccine (i.e. the Johnson & Johnson vaccine) is more likely than a two-shot vaccine (i.e. the Pfizer and Moderna vaccines) to achieve full vaccination of a transient population, such as inmates in a county jail. Moreover, the Johnson & Johnson vaccine is an approved vaccine, which has been

---

[1] At the fairness hearing, Mr. Koerber presented alleged constitutional violations related to his incarceration but, as the Court informed him, those allegations do not relate to the claims in this lawsuit and he must raise them elsewhere. Class Counsel agreed to speak with Mr. Koerber separately concerning those allegations.

proven to be effective against COVID-19. The agreement requires Defendants to supply inmates with masks and replace them if they become soiled, and non-N-95 masks are now understood to be effective against the spread of COVID-19 and are what many non-incarcerated individuals also only have available. Further, Defendants are required to take precautions to isolate infected inmates from other inmates. Even in the general public the segregation of vaccinated and nonvaccinated individuals is not guaranteed.

      Finally, Class Counsel originally asked the Court to include individuals with hypertension in the subclass of medically vulnerable inmates; however, the Court declined to do so—likely because the Centers for Disease Control and Prevention ("CDC") did not recognize this condition as placing individuals at greater risk of severe illness or death if they contracted COVID-19. In any event, the Settlement Agreement does not afford the subclass of medically-vulnerable inmates any greater benefits than the Class. As such, whether Mr. Koerber is or is not considered to be a member of the subclass has no bearing on the fairness of the Class Settlement.

      Mr. Austin had no objections to the Class Settlement but wanted to inform the Court of the ways in which he believes Defendants already violated its terms. According to Class Counsel, Mr. Austin's concerns already were shared with them and counsel planned to address any alleged breaches with defense counsel in

accordance with the procedures set forth in the Class Settlement. Mr. Austin does not present objections warranting this Court's rejection of the settlement.

For these reasons, the Court overrules the objections to the Class Settlement and concludes that it reflects a fair, reasonable, and adequate resolution of this matter. The Court, therefore, **GRANTS** Plaintiffs' oral motion for final approval of the agreement.

**IT IS SO ORDERED.**

s/ Linda V. Parker<br>
LINDA V. PARKER<br>
U.S. DISTRICT JUDGE

Dated: July 22, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, July 22, 2021, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan<br>
Case Manager